Willie J. SMITH, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8811–CR–920.

Supreme Court of Indiana.

Feb. 12, 1990.
Rehearing Denied May 1, 1990.

Aaron E. Haith, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Burglary, a Class A felony; Conspiracy to Commit Burglary, a Class A felony; Robbery, a Class A felony; and Conspiracy to Commit Robbery, a Class A felony. The court withheld judgment on the Conspiracy to Commit Burglary, a Class A felony, and passed judgment on the other three convictions of twenty (20) years each, to be served concurrently.

The facts are: The victim in this case was 75–year–old George McReynolds, who lived in a double on Martindale Avenue in Indianapolis. He lived in one half of the double and rented out the other half to tenants. McReynolds was known in the neighborhood to carry large amounts of money on his person. This fact became known to appellant and his brother Ronald Slaughter and their friend Elfaygo Thomas, through appellant's girlfriend, Becky Hunt, who worked part-time for McReynolds.

Upon receiving this information, the three men entered into a conversation, initiated by appellant, wherein they discussed McReynolds' habit of carrying money and the fact that he also carried a gun. When the gun was mentioned, Slaughter produced a gun belonging to appellant, wiped off the gun and the ammunition, then reloaded the gun, holstered it, and placed it on the table around which they were seated.

Two attempts were made to rob McReynolds. On the first attempt, according to plan, Slaughter feigned a car breakdown and he and Thomas gained entrance to McReynolds' home where Slaughter was allowed to use the telephone. However, he and Thomas decided to abort the plan because McReynolds was holding his gun at the time.

Before the second attempt, the three men met again and it was decided that appellant would enter the rented half of McReynolds' double and engage the tenants in loud conversation while the other two broke into McReynolds' home in his absence and waited there for his return. Pursuant to this plan, Thomas and Slaughter entered the empty house by breaking through a window. As appellant occupied the attention of the next door neighbors, Thomas and Slaughter ransacked McReynolds' home and removed items through the open window.

After the two had waited approximately forty-five minutes, McReynolds returned. When Slaughter jumped him and demanded his money, a scuffle ensued, a shot was fired, and both men fled. When they gathered at Thomas's home, Slaughter claimed that the gun just "went off." Slaughter gave Thomas the gun and McReynolds' wallet and credit cards. Slaughter and Thomas then informed appellant about the shooting and appellant urged Slaughter to return to his home in Illinois. Appellant also instructed Thomas to hide the gun but not dispose of it. Thomas kept the credit cards and used them, which led to his arrest and subsequently the arrest of the other two.

McReynolds was shot in the mouth; the bullet injured his lip, passed through his tongue, fractured his jaw, hit his spine and ricocheted to the left side of his neck. A tracheotomy was necessary to effectively treat him. He remained hospitalized for three weeks. However, he died before trial from an apparently unrelated heart attack.

Thomas testified at appellant's trial pursuant to a plea agreement favorably disposing of the charges against him in exchange for his cooperation with the State. Slaughter also testified after a plea agreement but claimed Thomas was the trigger man and that his brother, the appellant, was not involved. However, Slaughter previously had given a statement to Sergeant West of the Indianapolis Police Department, which verified many aspects of Thomas's testimony. Appellant's girlfriend, Becky Hunt, also testified concerning the conversation she had overheard between the three men regarding the planning of the burglary and robbery.

■ Appellant claims the evidence is insufficient to support the finding of guilty on any of the charges against him. Appellant claims that Thomas's testimony should be completely ignored because it was obvious that Thomas was a liar. He makes the statement that Thomas's story does not reconcile with the physical evidence surrounding the shooting. However, he does not describe to us in what manner it differs.

He also contends that although Thomas testified that it was Slaughter who fired the shot which wounded McReynolds, the evidence more strongly points to the probability that it was Thomas who actually fired the shot. Slaughter testified that it was Thomas who fired the shot and that his brother did not have anything to do with it.

Appellant takes the position that the jury should have believed Slaughter and disbelieved Thomas. Such a position, of course, would require this Court to attempt to weigh the evidence, which was the prerogative of the jury. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

■ Appellant also contends that he should not have been convicted of Class A felonies because the agreement, as testified to by Thomas, did not include using a firearm or intentionally wounding McReynolds. However, an examination of the charges in this case clearly shows that the charged conspiracies were to commit burglary and robbery. The use of a deadly weapon or the intention to harm a victim are not nec-

essary parts of a conspiracy. It is sufficient if the conspiracy is to commit the crime and that serious bodily injury was a natural and probable consequence. *Phares v. State* (1987), Ind., 506 N.E.2d 65, 69.

Appellant further argues that Thomas's testimony should be disbelieved because it is ridiculous to think that he would agree to allow a weapon registered in his name to be used in a robbery; thus it should be presumed that he knew nothing of the affair prior to the robbery. This again was a matter presented for the consideration of the jury, which this Court will not attempt to second-guess. *Alfaro, supra.*

The fact that Thomas was a co-conspirator and testifying as a result of a plea bargain is not fatal to the conviction. *See Perkins v. State* (1985), Ind., 483 N.E.2d 1379; *Smith v. State* (1983), Ind., 455 N.E.2d 346; *Thomas v. State* (1981), Ind., 428 N.E.2d 231. Thomas's testimony standing alone would be sufficient to support the jury's verdict. However, in the case at bar, we also have the additional testimony of Thomas's former girlfriend, Tina Crawford, who supported his version of the happenings by reason of her overhearing of the conversation between appellant, Slaughter, and Thomas after the commission of the crime.

■ Appellant contends he should not be held responsible for the acts of his alleged co-conspirators because he was not with them at the time the crime was committed. However, he is in error in this regard. When a person enters into an agreement with others to commit a crime, he is criminally liable for everything done by his confederates which flows incidentally from the natural consequences of the criminal act, even though it was not intended as part of the original plan or whether the co-conspirators were present at the time the act occurred. *See Banks v. State* (1976), 265 Ind. 71, 351 N.E.2d 4, *cert. denied,* 429 U.S. 1077, 97 S.Ct. 821, 50 L.Ed.2d 797; *Atherton v. State* (1967), 248 Ind. 354, 229 N.E.2d 239; *Liford v. State* (1965), 247 Ind. 149, 210 N.E.2d 366, 213 N.E.2d 704. The

above are cited in *Brown v. State* (1980), Ind.App., 403 N.E.2d 901.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.