ATTORNEY FOR APPELLANT
Leanna K. Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Brian L. Reitz
Deputy Attorneys General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

**FILED**
Jul 22 2014, 10:05 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 58S01-1309-CR-586

KENYATTA ERKINS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Ohio Circuit Court, No. 58C01-1103-FA-003
The Honorable James D. Humphrey, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 58A01-1205-CR-215

**July 22, 2014**

**David, Justice.**

Following his conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury, Kenyatta Erkins presents us with a matter of first impression: whether the State must establish the existence of serious bodily injury for his conviction to stand. Without actual serious bodily injury to his alleged victim, he reasons, there is insufficient evidence to support his conviction. However, because conspiracy is a crime consisting of intent to commit

an underlying crime, an agreement between or among conspirators to commit the underlying crime, and an overt act by one of the conspirators in furtherance of the agreement, the State needed only to prove these elements beyond a reasonable doubt to support Erkins's conviction. We find that the State met its burden and affirm Erkins's conviction.

Erkins also claims that the trial court erred by permitting the State to amend the charging information on the second day of trial to reflect that a co-conspirator, and not he, committed the overt act. However, because the precise identity of the conspirator committing the overt act is not essential to the conspiracy charge, the amendment was one of form and not substance. As the amendment did not impact Erkins's ability to prepare his defense, we conclude that the trial court did not err in permitting the change.

## Facts and Procedural History

On October 5, 2010, police were monitoring Kenyatta Erkins and Ugbe Ojile via a wiretap on Erkins's cell phone and GPS monitors on vehicles commonly driven by the two men.[1] After driving to and from various southeastern Indiana casinos for most of the night, Erkins and Ojile arrived at the Grand Victoria Casino (now Rising Sun) in Rising Sun, Indiana, at 12:50 a.m. on October 6. Erkins stayed in the vehicle as Ojile entered the casino, where he remained for about three hours. Casino surveillance cameras recorded Ojile's subsequent actions.

Aside from the times he stepped away to phone Erkins, Ojile watched S.M. play cards at a nearby table. Around 1:00 a.m., Ojile called Erkins and told him that S.M. had about six

---

[1] All monitoring devices were secured by warrants. Police suspected Erkins and Ojile of twenty-five robberies, carried out between February 2009 and August 2010 and spanning Indiana, Ohio, and Kentucky, in which the victims were robbed in their homes after winning cash at Indiana casinos.

hundred dollars in front of him on the table. Ten minutes later, Ojile placed another call and told Erkins that he witnessed S.M. take what appeared to be "at least twenty grand" out of his pocket. After discussing whether to wait and see if S.M. would soon leave the casino, the men agreed to wait another hour.

At 2:48 a.m., Erkins called Ojile for an update. Ojile explained that S.M. had just won twenty-eight thousand dollars on the roulette machine and declined the casino's offer for a room. Then Ojile suggested "we should go lay on him" and declared that he was "willing like, go all the way with this mother f***er" because he didn't "think [they were] going to see any like this like anytime soon." (Tr. at 321; State's Ex. 4,7.)

At 3:37 a.m., Ojile exited the casino. S.M. reserved a hotel room at 3:41 a.m.

Driving home after dropping Erkins off at his house, Ojile called Erkins. In that conversation, the two men discussed robbing S.M. the next day:

| Ojile: | Yeah, so. I take it's a wrap like that's a hot area right? |
|---|---|
| Erkins: | I mean, it might not be a wrap but I'm just saying though like, like just being around there in the day time and s**t like that going off knowing that that's a working neighborhood. |
| Ojile: | Right. |
| Erkins: | You know what I'm saying? Like, it probably still can work but, I just think he gonna be a problem. |
| Ojile: | Yeah, he ain't gonna just be no smooth. |
| Erkins: | Yeah I don't think he a be smooth. |
| Ojile: | Especially cuz it's day, he might just . . . |
| Erkins: | Yeah that's what I'm saying like, being day time and you know whatever, whatever, you know really ain't got nobody to help, if we kind of like roughed him up and s**t like that like. I don't know, like I said man, them mother f**ing arabs, be thinking like they like they, they be thinking they n****s and s**t. |
| Ojile: | Right. |
| Erkins: | They not n****s, cuz even a n***a could try to do mother f***ers be on some bulls**t. Smack them around a little bit. |
| . . . . | |
| Ojile: | Try again tomorrow or something with this s**t. |

3

Erkins: That's it. Yeah but you know. Like I said you can't be putting too much into it, you know these week, these weekdays, you know what I mean? Either, either it is or it ain't. You know what I mean it's like s\*\*t if it ain't like just keep it moving you know cuz I mean like you know s\*\*t mother f\*\*\*ers, think mother f\*\*\*ers should put their overtime in on a mother f\*\*\*ing weekends man. Them weekdays man, them days should kind of end earlier, like if you don't see, if you don't see nothing early it's probably just time to just keep it moving.

. . . .

Ojile: But today was kind of true to the situation man, because like, dude that got a lot of s\*\*t man, its pocket gonna look fat, and today was just a testament to it, you know, it ain't like, I seen it fat, I was like man that ain't no napkin, you know (laughing).

Erkins: Right, it wanted no (inaudible) sheet.

Ojile: Right, so dude had to go hard when n\*\*\*a had that bulge, you know what it is (laugh).

. . . .

Erkins: So, you at, you at the crib?

Ojile: No, I'm not, I'm a still on Colerain trying to get to 74, but I'm straight man, so yeah you wanna stay at home with that n\*\*\*a, and then uh, we will try tomorrow.

Erkins: Alright.

(State's Ex. 2, 7.)

Early the next morning, police stopped Erkins and Ojile in Erkins's vehicle and conducted a search. Several items were seized, including dark clothing, camouflage gloves, a roll of duct tape, and a backpack containing a .40-caliber Glock handgun, a .40-caliber round of ammunition, a BB gun that resembled a handgun, and documents in Ojile's name. Police also searched Ojile's apartment and discovered a loaded magazine for the Glock.

On March 10, 2011, the State charged Erkins and Ojile each with one count of class A felony conspiracy to commit robbery resulting in serious bodily injury[2] and one count of class A

---

[2] Ind. Code §§ 35-41-5-2 (2008) and 35-42-5-1 (2008).

4

felony attempt to commit robbery resulting in serious bodily injury.[3]  Before opening arguments on the second day of the joint jury trial, the State moved to dismiss the attempt charges and amend the conspiracy charges by substituting Ojile's name for Erkins's as the person who committed the overt act of surveilling S.M.  The trial court granted the State's motion to amend over Erkins's and Ojile's objections, and the jury found both men guilty as charged.  Following a sentencing hearing, both were sentenced to fifty years in the Indiana Department of Correction, all executed, to be served consecutively with sentences being served in Ohio.

Each initiated separate appeals, which were consolidated by the Court of Appeals.  Erkins and Ojile argued, among other things, that (1) the trial court erred by permitting the State to substantively amend the charging information on the second day of trial; and (2) the evidence was insufficient to support their convictions for class A felony conspiracy to commit robbery resulting in serious bodily injury because no actual injury to S.M. occurred.

Affirming their convictions, the Court of Appeals held that (1) because the amendment to the charging information was one of form and not substance, the trial court did not err in permitting the change; and (2) the evidence was sufficient to show that Erkins and Ojile intended and agreed to commit a robbery of S.M. that would result in serious bodily injury, and that Ojile committed an overt act in furtherance of their agreement, which is all that is required to obtain a conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury.  Erkins & Ojile v. State, 988 N.E.2d 299, 303 (Ind. Ct. App. 2013).  Erkins filed a petition to transfer, which we granted, thereby vacating the opinion below, except those portions we

---

[3] Ind. Code §§ 35-41-5-1 (2008) and 35-42-5-1.

summarily affirm.[4] [5] Erkins & Ojile v. State, 993 N.E.2d 625 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

## I.      Amendment to Charging Information

Originally, the State's charging information alleged

> On or about October 6, 2010, in Ohio County, State of Indiana, Ugbe Ojile and Kennyatta [sic] Erkins, with the intent to commit the felony of Robbery Causing Serious Bodily Injury, did agree with one another to commit the felony of Robbery Causing Serious Bodily Injury and Kennyatta [sic] Erkins did perform an overt act in furtherance of said agreement, to-wit: conducted surveillance on [S.M.] at the Grand Victoria Casino.

(Ojile's App. at 51.)   On the second day of trial and over Erkins's objection, the trial court granted the State's motion to amend the information by changing the identity of the conspirator who conducted the surveillance from Erkins to Ojile.  Finding the change to be "a matter of form, not substance," the trial court reasoned that "there is no surprise involved here, based upon . . . the information contained in the probable cause affidavit and the nature of the allegations here, no undue surprise or prejudice will be caused to the defendants."  (Tr. at 193.)  Erkins maintains that because his defense had been based on the State's allegation that he had done the

---

[4] Erkins and Ojile also raised issues relating to the admission of evidence gathered after they left the casino, the admission of testimony interpreting the slang used in their phone conversations, and prosecutorial misconduct during closing arguments.  Additionally, Ojile asserted that his counsel provided ineffective assistance by failing to argue the defense of abandonment.  The Court of Appeals properly resolved each issue, and we summarily affirm those portions of its opinion pursuant to Ind. Appellate Rule 58(A).

[5] Ojile filed pro se a petition to transfer, which this Court denies today.

surveillance, the change was one of substance; thus, the trial court erred by permitting the amendment.

"A charging information may be amended at various stages of a prosecution, depending on whether the amendment is to the form or to the substance of the original information." Fajardo v. State, 859 N.E.2d 1201, 1203 (Ind. 2007). Whether an amendment to a charging information is a matter of substance or form is a question of law. We review questions of law de novo. State v. Moss-Dwyer, 686 N.E.2d 109, 110 (Ind. 1997).

Amendments to a charging information are governed by Ind. Code § 35-34-1-5 (2008). Subsection (b) provides, in pertinent part, that "[t]he indictment or information may be amended in matters of substance . . . before the commencement of trial; if the amendment does not prejudice the substantial rights of the defendant." Subsection (c) provides that "[u]pon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant."

A defendant's substantial rights "include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights." Gomez v. State, 907 N.E.2d 607, 611 (Ind. Ct. App. 2009), trans. denied. "Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges." Sides v. State, 693 N.E.2d 1310, 1313 (Ind. 1998), abrogated on other grounds by Fajardo, 859 N.E.2d. at 1206–07. As we stated in Fajardo,

> [a]n amendment is one of form and not substance if a defense
> under the original information would be equally available after the
> amendment and the accused's evidence would apply equally to the
> information in either form. Further, an amendment is of substance
> only if it is essential to making a valid charge of the crime.

7

859 N.E.2d at 1205 (quoting <u>McIntyre v. State</u>, 717 N.E.2d 114, 125–26 (Ind. 1999)).

Here, the State was required to establish the elements of conspiracy, as set forth by Ind. Code § 35-41-5-2:

> (a) a person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony. . . . (b) The state must allege and prove that *either the person or the person with whom he agreed performed an overt act in furtherance of the agreement.*

(emphasis added). Given Ind. Code § 35-41-5-2(b)'s requirement that the State must only prove that *either* Erkins *or* Ojile performed the overt act of surveilling S.M. in furtherance of their conspiracy, the particular identity of the co-conspirator performing the overt act is not essential to making a valid conspiracy charge.

Moreover, the probable cause affidavit and the video surveillance indicated that Ojile was the person inside the casino performing the surveillance. Even Erkins's trial counsel acknowledged as much.[6] Based on the evidence available to Erkins before the beginning of his trial, it would have come as no surprise to him that the State would attempt to prove that it was in fact Ojile who conducted the surveillance on S.M. inside the Grand Victoria Casino, and the mistaken placement of his name on the charging information would not have affected his ability to prepare his defense. We thus conclude that the State's amendment was one of form, and that the trial court did not err in permitting it.

---

[6] "The charging information alleges that Mr. Erkins is the individual who's performing the overt act, and that would be surveillance. The—all the video surveillance, the probable cause affidavit, all that did indicate that Mr. Ojile was the individual in the casino." (Tr. at 190.)

## II.     Sufficiency of the Evidence

Next, Erkins contends that the State failed to present sufficient evidence to support his conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury because the alleged victim S.M. was "never even touched." (Erkins's Br. at 15.) To Erkins, the plain language of the robbery statute requires the State to prove actual serious bodily injury for his conviction to stand. Alternatively, he argues that even if evidence of intent to inflict serious bodily injury while committing a robbery sustains a conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury, there was insufficient evidence that Ojile and he intended to seriously injure S.M.

When reviewing a claim of insufficient evidence to support a conviction, we

> consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of the appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. . . . Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. [T]he evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

Drane v. State, 867 N.E.2d 144, 146–47 (Ind. 2007) (internal quotations and footnotes omitted). "A reasonable inference of guilt must be more than a mere suspicion, conjecture, conclusion, guess, opportunity, or scintilla." Mediate v. State, 498 N.E.2d 391, 393 (Ind. 1986).

As provided above, to convict Erkins of class A felony conspiracy to commit robbery resulting in serious bodily injury, the State must prove beyond a reasonable doubt that (1) Erkins; (2) with the intent to commit a robbery; (3) agreed with Ojile to commit the robbery; and (4) either Erkins or Ojile performed an overt act in furtherance of their agreement. Ind. Code § 35-41-5-2. "It is not necessary . . . to present direct evidence of a formal express agreement. The

agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act." Survance v. State, 465 N.E.2d 1076, 1080 (Ind. 1984) (internal citations omitted).

Ind. Code § 35-42-5-1 provides that

> [a] person who knowingly or intentionally takes property from another person or from the presence of another person:
>
> (1) by using or threatening the use of force on any person; or
>
> (2) by putting any person in fear;
>
> commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a *Class A felony if it results in serious bodily injury to any person other than a defendant.*

(emphasis added).[7] "'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292 (Supp. 2013).

Whether the State must establish the actual existence of serious bodily injury in order to convict a defendant of class A felony conspiracy to commit robbery resulting in serious bodily injury is an issue of first impression before this Court. Erkins would have us begin by looking to the language of the robbery statute, as "[t]he primary rule in statutory construction is to ascertain

---

[7] Effective July 1, 2014, Ind. Code § 35-42-5-1 was recodified. In the present version of the statute, "levels" replace "classes"; however, this does not impact our analysis.

and give effect to the intent of the legislature. The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." Hendrix v. State, 759 N.E.2d 1045, 1047 (Ind. 2001) (internal citations omitted).

Under Erkins's reasoning, "the legislature opted to use the words 'results in serious bodily injury' to turn a C Felony Robbery into an A Felony Robbery. . . . [A] result derives from an action and ends up as a consequence. In other words, if nothing happens, then there can be no result."[8] (Erkins's Br. at 18.) To Erkins, it follows that "[h]ad the legislature intended to criminalize potential harm or thoughts of injuring another, it could have used words like 'serious bodily injury is contemplated' or 'serious bodily injury is intended.' But the legislature did not choose that language." (Erkins's Br. at 18.) Instead, Ind. Code § 35-42-5-1 "specifically states that serious bodily injury must actually *result* from the robbery." (Erkins's Br. at 18.) According to Erkins, because S.M. did not suffer serious bodily injury, the State failed to establish the existence of the harm contemplated by a class A felony robbery conviction. Without serious bodily injury, he reasons, his offense would be a class C felony robbery—if he could be convicted at all. Unable to prove an element of class A felony robbery, the State therefore failed to offer sufficient evidence to sustain his conviction, Erkins concludes.

But Erkins's focus on the language of the *robbery* statute is misplaced. As the Court of Appeals succinctly explained, Erkins and Ojile

> did not actually commit robbery and were not charged with robbery. Appellants were charged with and convicted of *conspiracy*. By its very nature, conspiracy is a crime of intent and

---

[8] For support, Erkins quotes Webster's Dictionary 1002 (10th ed. 1988): "'Result' is defined as: 1. [T]o happen or exist as a result of a cause. 2. To end a given way. . . . The consequence or outcome of an action."

agreement. To sustain a conviction for conspiracy, the State is not required to prove that the crime intended and agreed upon was actually committed or even attempted. . . . Appellants' argument that the robbery statute requires actual injury ignores the fact that Appellants[] were charged with conspiracy to commit robbery resulting in serious bodily injury. Conspiracy is a felony of the same class as the underlying felony. Ind. Code § 35-41-5-2. Their argument implies that two people could never conspire to achieve a specific result. We are unpersuaded.

Erkins & Ojile v. State, 988 N.E.2d at 309 (internal footnotes omitted).

Contrary to Erkins's reasoning, the State does not have to show actual serious bodily injury to sustain a conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury. We agree with both the Court of Appeals and the State that it is well established that defendants can conspire to commit a specific result—here robbery resulting in serious bodily injury.

It may be helpful to think of conspiracy to commit robbery resulting in serious bodily injury as consisting of effectively two "mini-conspiracies" within one crime: a conspiracy to commit robbery and a conspiracy to commit serious bodily injury in the course of the robbery. Each "mini-conspiracy" requires the State to establish intent, agreement, and the commission of an overt act in furtherance of the agreement.

Put differently, Erkins's conviction could not stand if the State had only proven beyond a reasonable doubt that, with the intent to commit robbery, Erkins agreed with Ojile to commit the robbery, and Ojile performed an overt act in furtherance of their agreement. The State also had to present evidence that Erkins intended and agreed with Ojile to seriously injure S.M. in the course of the robbery, and that one of the men performed an overt act in furtherance of this agreement.

In understanding conspiracy to commit robbery and conspiracy to commit serious bodily injury in the course of a robbery as two "mini-conspiracies" within the crime of class A

conspiracy to commit robbery resulting in serious bodily injury, we emphasize that we are not adding elements to the crime or altering the State's burden of proof. Rather, we use this approach only to demonstrate why Erkins's argument that serious bodily injury must actually occur for his conviction to stand is a misinterpretation of the law of conspiracy, for the actual occurrence of serious bodily injury is not an element of the charged crime that the State must establish.

Moreover, requiring the State to prove that Erkins conspired to seriously injure S.M. in the course of the robbery (in addition to conspiring to rob S.M.) is consistent with the higher showing required when the State pursues a statutory enhancement. As Erkins points out, "[t]he legislature opted to use the words 'results in serious bodily injury' to turn a C Felony Robbery into an A Felony Robbery." (Erkins's Br. at 18.) We addressed the validity of the statutory enhancements contained within the robbery statute in Payne v. State:

> The primary purposes of statutorily enhanced penalties for robbery resulting in bodily injury include deterring those who would commit robbery from in any way harming their victims, and protecting society from those persons who demonstrate the propensity to harm the victims of their crimes. These policy considerations are entirely appropriate for legislative enactments establishing the sentences for serious crimes.

484 N.E.2d 16, 19 (Ind. 1985). A conspiracy is a felony of the same class as the underlying felony. Thus, because the legislature has deemed robbery resulting in serious bodily injury more severe to both the victim and society, conspiracy to commit robbery resulting in serious bodily injury is necessarily more severe than conspiracy to commit robbery or conspiracy to commit robbery resulting in bodily injury—and this severity must be reflected in both the State's heightened showing and the defendant's potential punishment.

Erkins focuses on the word "results" because he believes it requires the State to prove that serious bodily injury actually occurred for him to conspire to commit robbery resulting in serious bodily injury. But as we explained, "results" is significant because it indicates that the

13

State must establish that Erkins conspired with Ojile to rob and seriously injure S.M. in the course of the robbery the men conspired to commit. That the State must prove both "mini-conspiracies" beyond a reasonable doubt is consistent with the State's responsibility whenever it seeks to establish a statutory enhancement.

The existence of a statutory enhancement is a fact-sensitive determination to be made by the trier of fact. For example, conspiracy to deal methamphetamine, without more, is a class B felony, but conspiracy to deal methamphetamine is a class A felony where the amount of the drug weighs three grams or more. Ind. Code § 35-48-4-1.1 (2008). In order to establish conspiracy as a class A felony, the State must prove beyond a reasonable doubt that the conspiracy was to deal at least three grams of methamphetamine.

The same is true under our battery statute. Conspiracy to commit battery, by itself, is a class B misdemeanor, but conspiracy to batter a police officer while the officer is engaged in the execution of his or her official duty is a class A misdemeanor. Ind. Code § 35-42-2-1 (2008). In this instance, the State must prove beyond a reasonable doubt that the target of the conspiracy was a police officer engaged in the execution of his or her official duty to establish class A misdemeanor conspiracy to commit battery.

Returning to the issue before us, there is more than sufficient evidence that Erkins and Ojile conspired not only to rob S.M. but also to seriously injure S.M. in the course of robbing him. Indeed, by being recorded on camera and over the phone and tracked by GPS monitors, Erkins and Ojile themselves provided the State with the damning evidence it presented to their jury.

For instance, the Grand Victoria Casino's surveillance cameras recorded nearly three hours of Ojile watching S.M. play cards and stepping away only to update Erkins, who waited outside in the car—with an attached GPS monitor and his wiretapped cell phone—the entire time. Ojile's near-constant observation of S.M. constituted an overt act in furtherance of their agreement to rob S.M. Additionally, the police wiretap of Erkins's cell phone revealed four

14

conversations between the two men indicating their intent and agreement to rob and seriously injure S.M. In their first two conversations, Ojile reported the amount of money S.M. possessed to Erkins, and in their second conversation, the men agreed to wait for S.M. to exit the casino.

In their third conversation, Ojile proposed the two "should go lay on" S.M., who he had just witnessed win twenty-eight thousand dollars on the roulette machine. (Tr. at 321; State's Ex. 4, 7.) According to the detective who testified as to the men's use of street jargon, "go lay on him" meant to "lay in wait to rob him." (Tr. at 321.) Ojile also expressed his willingness to "go all the way with this mother f***er"; or as the detective put it, "to do whatever it takes, use whatever act of violence, to rob him." (Tr. at 321; State's Ex. 4, 7.) Erkins did not object to either of Ojile's statements and agreed that the men should continue to wait for S.M. to leave the casino. When it appeared that S.M. was going to stay the night at the casino, Erkins and Ojile went home.

Yet another manifestation of Erkins's intent and agreement with Ojile to rob and seriously injure S.M. was the recorded conversation that ensued after Ojile dropped off Erkins on his way home. Erkins predicted that S.M. was going to be a "problem" when they carried out the robbery and agreed with Ojile that S.M. was not going to be "smooth"—that "if he's robbed, he is going to fight back," as the detective testified. (Tr. at 324; State's Ex. 2, 7.) During this extended conversation, Erkins also stated, according to the detective's interpretation, that there would be too many witnesses if they robbed S.M. and "roughed him up and s**t like that" during the daytime. (Tr. at 322; State's Ex. 2, 7.) The conversation ended with Erkins expressing agreement to Ojile's declaration "we will try tomorrow." (State's Ex. 2, 7.)

Furthermore, when the men were arrested the following day, they were in possession of dark clothing, camouflage gloves, duct tape, and a backpack containing a .40-caliber Glock handgun, a .40-caliber round, and a BB gun that resembled a handgun. Possession of these tools not only indicated that Erkins and his co-conspirator were prepared to "go all the way" with S.M. to commit the robbery but also constituted an overt act in furtherance of this agreement.

15

Fortunately, police intervention prevented Erkins and Ojile from seriously injuring S.M. in the course of robbing him.

Based on the probative evidence and reasonable inferences supporting the verdict, we conclude that a reasonable fact-finder could find, beyond a reasonable doubt, that Erkins intended and agreed with Ojile to rob and seriously injure S.M. in the course of the robbery, and that Ojile's surveillance of S.M. at the Grand Victoria Casino and the men's possession of guns and potential robbery tools at the time of their arrests constituted overt acts in furtherance of their agreement. Thus, sufficient evidence underlies Erkins's conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury.

## Conclusion

While under three different forms of surveillance, Erkins and Ojile expressed their intent and agreement to rob and seriously injure S.M., and the men performed overt acts in furtherance of their agreement. The State therefore presented sufficient evidence at trial to support Erkins's conviction for class A felony conspiracy to commit robbery resulting in serious bodily injury. And because the particular identity of the conspirator performing the overt act is not essential to the conspiracy charge, the trial court did not err in permitting the State's amendment of form to Erkins's charging information. Accordingly, we affirm Erkins's conviction.

Massa and Rush, J.J., concur.
Rucker, J., concurs in part and dissents in part with separate opinion in which Dickson, C.J., joins.

**RUCKER, J. concurring in part and dissenting in part.**

The majority declares: "Whether the State must establish the actual existence of serious bodily injury in order to convict a defendant of class A felony conspiracy to commit robbery resulting in serious bodily injury is an issue of first impression before this Court." Slip op. at 10 - 11. I agree the precise question has not been previously presented to us. However, our existing case authority as well as familiar tenets of statutory construction compels the conclusion that the State must prove the existence of serious bodily injury in order to convict a defendant of class A felony conspiracy to commit robbery. I therefore respectfully dissent from the majority's contrary view.

Central to this discussion is that serious bodily injury is not an element of the offense of robbery. Instead it is a penalty enhancement that increases the class of the offense from a C to an A felony. "The primary purposes of statutorily enhanced penalties for robbery resulting in bodily injury [or serious bodily injury] include deterring those who would commit robbery from in any way harming their victims, and protecting society from those persons who demonstrate the propensity to harm the victims of their crimes." Payne v. State, 484 N.E.2d 16, 19 (Ind. 1985). In consequence, for the completed offense of robbery the State is required to prove serious bodily injury in order to enhance the offense to a class A felony. See, e.g., Young v. State, 725 N.E.2d 78, 82 (Ind. 2000) (affirming defendant's conviction for robbery as a class A felony because the record contained "substantial probative evidence from which the factfinder could reasonably find serious bodily injury beyond a reasonable doubt."); Hawkins v. State, 514 N.E.2d 1255, 1256 (Ind. 1987) (finding the evidence sufficient to establish "the 'serious bodily injury' element for class A robbery" under our standard of review for a sufficiency challenge by detailing the nature and extent of the injuries the victim actually suffered). The requirement that the State must prove the existence of the penalty-enhancing conduct beyond a reasonable doubt for a completed offense, is no less true for a charge of conspiracy. The following recitation from our Court of Appeals is instructive on this point:

> Robbery is a class A felony if it results in serious bodily injury.
> The state does not have to prove that the defendant knowingly or
> intentionally caused such injury. If serious bodily injury occurred

> as a consequence of the conduct of the accused, the offense is a class A felony. The same would be true as to bodily injury raising the offense to a class B felony. The infliction of the injury simply raises the grade of the offense. If injury results, the robbery is a more serious offense. But, the infliction of the injury need not be intended. Conspiracy is a felony of the same class as the underlying felony. If the infliction of bodily injury or serious bodily injury need not be done knowingly or intentionally to raise robbery from a class C felony to either a class B or class A felony, neither does the infliction of such an injury have to be a subject of the agreement. If the parties agree to commit robbery, *and as a result of an overt act committed in furtherance of the conspiracy a serious bodily injury occurs, the conspiracy is a class A felony*.

Phares v. State, 506 N.E.2d 65, 69 (Ind. Ct. App. 1987) (emphasis added) (internal citations omitted) (rejecting claim that information failed to charge a class A felony conspiracy because it did not allege that defendant agreed to inflict serious bodily injury). This Court has likewise weighed in on the subject. In Smith v. State, 549 N.E.2d 1036 (Ind. 1990), the defendant was convicted of, among other things, conspiracy to commit robbery as a class A felony where the victim sustained serious bodily injury. The defendant challenged the conviction in part on grounds that the agreement he entered with his cohort did not include intentionally wounding the victim. Rejecting this argument, the Court had this to say: "The use of a deadly weapon or the intention to harm a victim are not necessary parts of a conspiracy. It is sufficient if the conspiracy is to commit the crime *and that serious bodily injury was a natural and probable consequence*." Id. at 1038 (emphasis added). The underlying premise of the foregoing authority is that in charging a conspiracy although the State need not allege an agreement to commit serious bodily injury, the offense is enhanced only if it actually "results in serious bodily injury." Ind. Code § 35-42-5-1.

In reaching the conclusion that the State need not prove the existence of serious bodily injury, the majority says, "[i]t may be helpful to think of conspiracy to commit robbery resulting in serious bodily injury as consisting of effectively two 'mini-conspiracies' within one crime: a conspiracy to commit robbery and a conspiracy to commit serious bodily injury in the course of the robbery." Slip op. at 12. This is an inappropriate analogy in my view because it requires

2

treating the bodily injury component as an element of the offense. Were this in fact the case, then there would be no problem. Take for example criminal recklessness. The statute provides in pertinent part: "A person who recklessly, knowingly, or intentionally . . . inflicts serious bodily injury on another person . . . commits criminal recklessness, a Class D felony." I.C. § 35-42-2-2(d). Because the infliction of serious bodily injury is an element of the offense, a person conceivably could be found guilty of conspiracy to commit criminal recklessness as a class D felony even if no bodily injury actually occurred. What we have before us however is considerably different. Serious bodily injury is not an element of robbery and thus not an element of conspiracy. Again, it is a penalty enhancement that increases the class of the offense. And the enhancement kicks in only where the offense "results in serious bodily injury."

This understanding is also consistent with Indiana's statutory framework. Indiana Code section 35-41-5-2(a) provides in relevant part: "A person conspires to commit a felony when, with intent to commit *the felony*, he agrees with another person to commit *the felony*." (emphasis added). The felony of robbery is defined as "tak[ing] property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear." I.C. § 35-42-5-1. In turn, to prove conspiracy to commit robbery "the State [is] required to establish that Defendant had the intent to commit robbery, agreed with another person to commit that robbery, and that some overt act was performed in furtherance of that agreement." Porter v. State, 715 N.E.2d 868, 870 (Ind. 1999) (citing I.C. § 35-41-5-2(1)(a) (1993)). Bodily injury or serious bodily injury is simply not an element of the felony of robbery. Had the Legislature intended as much it certainly could have done so as have other jurisdictions. See, e.g., Ky. Rev. Stat. Ann. § 515.020(1)(a) ("A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he: (a) Causes physical injury to any person who is not a participant in the crime."); N.J. Stat. Ann. § 2C:15-1(a)(1) ("A person is guilty of robbery if, in the course of committing a theft, he: (1) Inflicts bodily injury or uses force upon another."); Tex. Penal Code Ann. § 29.02(a)(1) ("A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another."). Although there

3

are no reported decisions in the foregoing jurisdictions on whether conspiracy to commit robbery would be sustained on the facts before us, one could conceive of such possibility since bodily injury is an element of the offense. But Indiana's statutory scheme does not include bodily injury or serious bodily injury as an element of the offense, and that is an important distinction.

Finally, the result the majority reaches today creates something of an anomaly. Codefendants who combine their efforts to rob a victim can have their sentences enhanced only upon proof beyond a reasonable doubt that their conduct resulted in bodily injury or serious bodily injury. By contrast, if those same codefendants *conspire* to rob a victim, and engage in the exact same conduct, their sentences may be enhanced even if bodily injury never occurs. With such a lethal weapon at its disposal why would the State ever charge a simple robbery offense? This is not a result our Legislature could have intended.

In this case the State failed to prove that Erkins' conspiracy to rob the victim resulted in serious bodily injury justifying an enhancement. I would therefore vacate his conviction as a class A felony and remand this cause with instructions to enter judgment as a class C felony and to resentence accordingly. In all other respects I concur in the majority opinion.

Dickson, C.J., joins.