## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 30 2017, 8:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kathie A. Perry
Baldwin Kyle & Karnish
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Harry Spicer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 30, 2017

Court of Appeals Case No.
15A01-1512-CR-2205

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1404-FA-35

**Pyle, Judge.**

## Statement of the Case

[1] Harry Spicer ("Spicer") appeals, following a jury trial, his conviction and sentence for Class A felony conspiracy to commit dealing in methamphetamine.[1] Spicer argues that there was insufficient evidence to support his conviction and that his forty-year sentence is inappropriate. Concluding that there is sufficient evidence to support Spicer's conviction and that Spicer—who was on probation from his conviction for Class B felony conspiracy to deal in a narcotic drug (methamphetamine) at the time of his offense—has failed to show that his sentence is inappropriate, we affirm his conviction and sentence.

[2] We affirm.

## Issues

1. Whether sufficient evidence supports Spicer's conviction.

2. Whether Spicer's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

## Facts

[3] In January 2014, several law enforcement agencies—including officers in Dearborn County, Indiana and in Butler County, Ohio—were engaged in an

---

[1] IND. CODE § 35-41-5-2; I.C. § 35-48-4-1.1. We note that, since the time of Spicer's offense, the dealing in methamphetamine statute has been twice amended, effective July 2014 and July 2016, and that the conspiracy statute has been amended, effective July 2014. Because Spicer committed his offense in February 2014, we will apply the statutes in effect at that time.

investigation regarding a methamphetamine manufacturing operation. Spicer's brother, Sam Spicer ("Sam"), and Lisa Ellis ("Ellis") were two of the suspects in the methamphetamine manufacturing investigation. Through their investigation, officers discovered, in relevant part, that Ellis and Sam would take pseudoephedrine to a residence in Butler County, Ohio, where Vernis Newton ("Newton") would use the pseudoephedrine to manufacture methamphetamine.[2] For each 96-count box of pseudoephedrine that Ellis and Sam provided, Newton was able to manufacture two grams of methamphetamine, of which one gram would go to Newton and the other gram would go to Ellis and Sam to share. To obtain the necessary pseudoephedrine, Ellis and Sam either purchased the pseudoephedrine themselves or—due to monthly quantity limitations on how much pseudoephedrine a person could purchase[3]—they paid other people to purchase it.[4]

[4] Around February 6, 2014, Ellis and Sam took five boxes of pseudoephedrine to Newton in Ohio so he could make some methamphetamine. While Ellis and

---

[2] The residence was owned by Mike Wiscupps ("Wiscupps") but used by Newton to manufacture the methamphetamine.

[3] According to a police officer's testimony at trial, a person is limited to purchasing 7.2 grams of pseudoephedrine every thirty days. *See also* IND. CODE § 35-48-4-14.7(e)(2) (2014) (providing that a "person may not purchase drugs containing more than . . . seven and two-tenths (7.2) grams of . . . pseudoephedrine . . . in a thirty (30) day period[.]").

[4] Ellis and Sam paid these people to purchase the pseudoephedrine with either methamphetamine or Suboxone.

Sam were in Ohio, their car broke down. They borrowed Newton's car, went to a Walmart, and Sam was arrested for shoplifting.

[5] The following day, Ellis contacted Spicer about getting Sam bonded out of jail. Spicer and Ellis exchanged text messages and also spoke by phone. They were ultimately unable to bond Sam out of jail that day.[5] Before returning to Indiana, Spicer took Ellis to see Newton, who "owed" Ellis some methamphetamine. (Tr. 107). Spicer drove Ellis back home to Indiana, and she shared the methamphetamine with Spicer. Ellis and Spicer then discussed taking boxes of pseudoephedrine to Newton the following day, and they each agreed to obtain some pseudoephedrine.

[6] On February 8, 2014, Ellis texted Newton and told him, "Harry [Spicer] wanted me to ask you if you will do the same for him as you do [S]ammy [and] if so[]can we come see you[?]" (State's Ex. 21). Newton responded, "How many[?]" (State's Ex. 21). Ellis texted "5[,]" and Newton responded, "Come on[.]" (State's Ex. 21).

[7] Ellis had already purchased her monthly limit of pseudoephedrine, so she took Sebastian Duerstock ("Duerstock") to a grocery store in Lawrenceburg to purchase a box of pseudoephedrine for her. Spicer, who was prohibited by law from purchasing pseudoephedrine due to his prior conviction, got someone else to purchase three boxes of pseudoephedrine. Spicer and Ellis then took the four

---

[5] Sam was able to bond out of jail on February 10, 2014.

boxes of pseudoephedrine to Newton in Ohio. They expected that they would ultimately get four grams of methamphetamine since those four boxes would be used to manufacture eight grams of methamphetamine. Newton gave them one gram of methamphetamine and said he needed to make some more, so they planned to return later to collect their other three grams of methamphetamine. Spicer and Ellis, however, were unable to return to collect the manufactured methamphetamine from Newton because he was arrested the following day.[6]

[8] On February 13, 2014, Ellis, who was using methamphetamine, called the police because Sam was "drunk" and "was yelling all in [her] face[.]" (Tr. 114). When speaking to the police, Ellis ended up telling them about the multiple people involved in the pseudoephedrine purchasing/methamphetamine manufacturing scheme. She also specifically mentioned that Spicer was using methamphetamine and had gathered boxes of pseudoephedrine to take to Ohio when Sam was in jail. The police obtained a search warrant for Ellis's cell phone records, performed a forensic analysis of her phone, and then conducted a recorded interview with Ellis on March 26, 2014. During this interview, the police questioned her about Spicer's involvement.

[9] Thereafter, on April 4, 2014, the State charged Spicer with Class A felony conspiracy to commit dealing in methamphetamine (based on manufacturing)

---

[6] Following Newton's arrest, the police executed a search warrant at the property that Newton used to manufacture the methamphetamine, and they found evidence and ingredients of an active methamphetamine lab.

in an amount of three grams or more. The overt act alleged to be in furtherance of the agreement was the purchase of pseudoephedrine by Spicer or Ellis for the manufacture of methamphetamine.[7]

[10] The trial court held a four-day jury trial on October 5-8, 2015. Ellis testified that on February 7, 2014, she and Spicer had a "conversation" "in person" and "planned" to get pseudoephedrine to give to Newton so he could manufacture some methamphetamine. (Tr. 152). She also testified that she and Spicer obtained a total of four boxes of pseudoephedrine and took them to Newton in Ohio. The State introduced into evidence a copy of Ellis's text messages with Spicer and Newton.

[11] The trial court instructed the jury regarding the Class A felony conspiracy to commit dealing in methamphetamine in an amount of three grams or more charge, and it also gave an included-offense instruction for Class B felony conspiracy to commit dealing in methamphetamine. The jury convicted Spicer of the Class A felony as charged.

[12] When sentencing Spicer, the trial court found that his criminal history, including his commission of the current offense when on probation, was a

---

[7] Aside from Spicer, twenty-five people, including Ellis, Sam, and Newton, ended up being charged with conspiracy to commit dealing in methamphetamine, and they all, with exception of Spicer, pled guilty to the charge.

"significant" aggravating circumstance. (Tr. 325). Specifically, when addressing this aggravator, the trial court stated:

> The Pre-Sentence Investigation Report indicates [Spicer] has had one prior felony conviction and four other prior unrelated misdemeanor convictions. Even more significant is that [Spicer] was on probation for Dealing in a Narcotic Drug (Methamphetamine), a Class B felony, and Conspiracy to Deal in a Narcotic Drug (Methamphetamine), a Class B felony when he committed his current offense. [Spicer] is currently serving a probation violation sentence [and] a term of twelve years w[as] revoked in Cause No. 15D02-0610-FB-014 based upon the current case. The Court finds it significant that this is now [Spicer's] second conviction involving Dealing in Methamphetamine in less than ten years. The Court also finds it significant that [Spicer] was given a relatively lenient sentence for his prior offenses and failed to take advantage of that opportunity. The Court also finds that [Spicer] now has two probation violations.

(Tr. 325-26).[8] The trial court also addressed Spicer's proposed mitigating circumstances, which included undue hardship to his minor children and Spicer's health problems.[9] The trial court rejected the undue hardship mitigator, finding that Spicer had failed to show any undue hardship as his mother had been caring for his children, who were ages eighteen and fourteen.

---

[8] Spicer appealed the revocation of his probation, and our Court affirmed the trial court's judgment. *See Spicer v. State*, No. 15A04-1504-CR-148 (Ind. Ct. App. Nov. 13, 2015).

[9] The trial court recognized that Spicer had a prior heart attack, which resulted in the placement of four stints and that he "suffers from Type II diabetes, rheumatoid arthritis, high cholesterol, [and] high blood pressure for which he takes daily medication to manage these medical conditions." (Tr. 326).

The trial court found that Spicer's health was a mitigating factor, but it determined that it was not a significant factor given his continued involvement with illegal drugs. The trial court imposed a forty (40) year sentence to be executed in the Department of Correction consecutively to his sentence from his probation revocation. Spicer now appeals.

# Decision

## 1. Sufficiency of Evidence

[13] Spicer argues that the evidence was insufficient to support his Class A felony conspiracy to commit dealing in methamphetamine conviction.

[14] "When conducting a sufficiency of the evidence review after a jury verdict, the appellate posture is markedly deferential to the outcome below[.]" *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016). Our Indiana Supreme Court has explained our applicable standard of review in a sufficiency case as follows:

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The

> evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original). "A conviction can be sustained on only the uncorroborated testimony of a single witness[.]" *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[15] At the time of Spicer's offense in February 2014, INDIANA CODE § 35-41-5-2 (2014) provided that a "person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony" and that the State "must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement." Additionally, INDIANA CODE § 35-48-4-1.1(a)(1) (2014) provided that a person who knowingly or intentionally: (A) manufactures; (B) finances the manufacture of; (C) delivers; or (D) finances the delivery of methamphetamine commits dealing in methamphetamine as a Class B felony.[10] This offense, however, was enhanced to a Class A felony when the amount of drug involved weighed three grams or more. I.C. § 35-48-4-1.1(b)(1) (2014). Thus, to convict Spicer as charged, the State was required to prove beyond a reasonable doubt that Spicer, with the intent to commit the felony of dealing in

---

[10] At the time of Spicer's offense, "manufacture" was defined, in relevant part, as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance . . ." or "the organizing or supervising of" the production, preparation, propagation, compounding, conversion, or processing of a controlled substance. I.C. § 35-48-1-18 (2014).

methamphetamine in an amount of three grams or more, agreed with Ellis and/or Newton to commit the crime and that Spicer or Ellis performed an overt act in furtherance of that agreement, specifically that Spicer or Ellis obtained pseudoephedrine for the manufacture of methamphetamine.

[16]     Spicer does not challenge the amount of the drug at issue nor the overt act element. Indeed, Spicer concedes that he and Ellis each obtained pseudoephedrine and that they took four boxes of it to Newton, and he does not challenge that one box of pseudoephedrine would result in the manufacture of two grams of methamphetamine.

[17]     Instead, Spicer suggests that he did not intend to commit or agree to commit the felony of dealing in methamphetamine based on manufacturing. Spicer suggests that, in order to find him guilty of the charged offense, the State was required to provide specific evidence showing that he or Ellis had personal knowledge of, or an active role in, the methamphetamine manufacturing process. Spicer does not dispute that he and Ellis agreed to obtain the pseudoephedrine, and he acknowledges that he and Ellis were "certainly in possession of methamphetamine[.]" (Spicer's Br. 10). He, however, asserts that there was no specific evidence regarding an agreement to actually manufacture methamphetamine because the State did not provide any evidence to show that he had "obtain[ed] all of the ingredients and equipment necessary, set-up either a mobile lab or a stand-alone laboratory, or [had] knowledge of the process of manufacturing methamphetamine." (Spicer's Br. 13).

[18]    It is not necessary for the State to present direct evidence of a formal express agreement. *Erkins v. State*, 13 N.E.3d 400, 407 (Ind. 2014), *reh'g denied*, *cert. denied*. Indeed, "[t]he agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act." *Id.*

[19]    Here, the State presented evidence that Newton had been manufacturing methamphetamine on a property in Ohio, and it presented specific evidence, including testimony and photographs, regarding the manufacturing process and manufacturing ingredients that were found at the property during the execution of a search warrant for that property. The State also presented evidence that Ellis and Spicer's brother, Sam, had long been involved in a scheme of obtaining pseudoephedrine and taking it to Newton, who then used that pseudoephedrine to manufacture methamphetamine. For each 96-count box of pseudoephedrine that Ellis and Sam took to Newton, he could make two grams of methamphetamine, of which one gram would go to Newton and the other gram was then split between Ellis and Sam. Ellis testified that when Sam was in jail in Ohio, Spicer went to Ohio to pick her up and was with her when she got some methamphetamine from Newton. She testified that upon returning to Indiana, she and Spicer discussed getting more boxes of pseudoephedrine to take to Newton so he could manufacture some methamphetamine. The State introduced a copy of Ellis's text message, in which she told Newton that Spicer wanted to know if Newton would "do the same for him as [he] d[id] [for] [S]ammy[.]" (State's Ex. 21). Additional text messages reveal that Newton

agreed to do so and told Ellis that she and Spicer could bring him the boxes of pseudoephedrine. Moreover, the State presented evidence that Spicer and Ellis collectively obtained four 96-count boxes of pseudoephedrine and took them to Newton in Ohio, and Ellis testified that she and Spicer were going to go back to Ohio to get their four grams of methamphetamine after Newton used the pseudoephedrine to make the methamphetamine.

[20] Based on the evidence presented during the jury trial, we find that there is sufficient evidence from which the jury could have found that Spicer entered into an agreement with Ellis and/or Newton to manufacture methamphetamine by providing the pseudoephedrine necessary to complete that manufacturing process. Spicer's argument is nothing more than a request to reweigh the evidence and witness credibility. We, however, will not reweigh the evidence or the finder of fact's credibility determination. *See Drane*, 867 N.E.2d at 146. Because there was probative evidence from which the jury could have found Spicer guilty beyond a reasonable doubt of Class A felony conspiracy to commit dealing in methamphetamine, we affirm his conviction.

## 2. Inappropriate Sentence

[21] Spicer argues that his forty-year sentence was inappropriate when considering his "minor role in the overall methamphetamine operation, his character, and the sentences of Ellis and Newton[,]" and he generally requests that he be "resentenced." (Spicer's Br. 7, 17).

[22] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*.

[23] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, the jury convicted Spicer of Class A felony conspiracy to commit dealing in methamphetamine. A Class A felony has a range of twenty (20) to fifty (50) years with an advisory sentence of thirty (30) years. I.C. § 35-50-2-4. The trial court imposed a term of forty (40) years for Spicer's Class A felony conviction.

[24] The nature of Spicer's offense involved him entering into an agreement that was to ultimately lead to the manufacturing of methamphetamine. While Spicer was not the person who made the methamphetamine, he did supply a necessary ingredient in the manufacturing process. Even though he was prohibited by law

from purchasing pseudoephedrine because of his prior methamphetamine conviction, he nevertheless obtained three boxes of pseudoephedrine and then crossed state lines to deliver that pseudoephedrine to Newton so that he could manufacture the methamphetamine. Indeed, Spicer acknowledges that his "objective was to obtain methamphetamine[.]" (Spicer's Br. 15). He, however, contends that the nature of his offense did not justify an enhanced sentence, arguing that his involvement was "quite insignificant." (Spicer's Br. 15).

[25] In support of this argument, Spicer attempts to liken his case to *Norris v. State*, 27 N.E.3d 333 (Ind. Ct. App. 2015). In that case, Norris pled guilty to Class B felony dealing in a controlled substance after he sold ten hydrocodone pills to a confidential informant for $60.00, and the trial court sentenced him to twenty (20) years, the maximum for a Class B felony. *Norris*, 27 N.E.3d at 334-35. On appeal, this Court reduced Norris's sentence under Appellate Rule 7(B). *Id.* at 336. We noted that Norris had four convictions for possession of marijuana and was on probation when he committed the offense, but we determined that the nature of his offense—which we described as "relatively innocuous" given the "small amount of drugs"—did not support the maximum sentence. *Id.*

[26] Here, unlike *Norris,* Spicer was not sentenced to the maximum possible number of years allowed for his conviction. Nor did Spicer plead guilty to his offense. Additionally, Spicer committed this crime when he was on probation for the very same crime committed here. Therefore, we decline to reduce Spicer's sentence based on the nature of his offense.

[27] Turning to Spicer's character, we note that Spicer has a criminal history, which most notably includes a conviction for conspiracy to commit dealing in methamphetamine as a Class B felony. He also has four unrelated misdemeanor convictions.[11] Furthermore, Spicer was on probation for his prior methamphetamine conviction at the time he committed the Class A felony offense being appealed. Additionally, Spicer had already violated that probation in 2008, and the trial court had ordered him to serve ninety days and then continued him on probation. Despite this additional opportunity at probation given to Spicer by the trial court, Spicer went out and got involved in methamphetamine-related activities again. As the trial court noted, Spicer "was given a relatively lenient sentence for this prior [methamphetamine] offense and failed to take advantage of that opportunity." (Tr. 326). We find that his prior criminal history, especially his prior conviction involving methamphetamine, and violation of probation reflect poorly on his character and reveal his unwillingness to follow the law.

[28] We acknowledge Spicer's assertion that he "suffers from significant health issues." (Spicer's Br. 16). However, the trial court recognized his health as a mitigating circumstance and determined that it was not significant given his continued involvement with illegal drugs. Indeed, the trial court stated that Spicer "was given an opportunity to change after his last involvement with

---

[11] These misdemeanor convictions include resisting law enforcement (1994), visiting a common nuisance (1995), reckless driving (2004), and operating a vehicle while intoxicated (2009).

illegal drugs for the sake of his health" but that his decision to "continu[e] this activity while on probation for dealing show[ed] his lack of concern for his health and his family." (Tr. 327). Spicer has not shown that his sentence was inappropriate given his character.

[29] We also reject Spicer's argument that his sentence is inappropriate when compared to the sentences imposed on Ellis and Newton. Ellis pled guilty to an amended count of Class B felony conspiracy to commit dealing in methamphetamine and was sentenced to twenty years, with ten years executed and ten years suspended to probation. Newton pled guilty to Class A felony conspiracy to commit dealing in methamphetamine in exchange for the State's recommendation for a thirty-year sentence, with fifteen years executed and fifteen years suspended to probation. However, unlike Ellis and Newton, Spicer did not plead guilty and decided to proceed to trial where a jury found him guilty of the Class A felony offense.[12] Furthermore, Ellis was sentenced for a Class B felony, not a Class A felony.

[30] Moreover, we have explained that when analyzing inappropriate sentencing claims, we should "concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced,

---

[12] Spicer did not receive a lengthier sentence because he exercised his Constitutional right to a jury trial. The difference is that his co-defendants accepted the State's offer of a shorter sentence as an inducement to get them to plead guilty. Spicer chose to accept the risk that the trial court, upon his conviction, might impose a sentence within the full range allowed, 20 to 50 years.

and what it reveals about the defendant's character." *Guzman v. State*, 985 N.E.2d 1125, 1134 (Ind. Ct. App. 2013) (internal quotation marks and citations omitted). Here, Spicer was a willing participant in a methamphetamine manufacturing operation, which was made more egregious by the fact that he was on probation for a prior methamphetamine-related conviction at the time he committed the offense.

[31] Spicer has not persuaded us that his forty-year sentence for his Class A felony conspiracy to commit dealing in methamphetamine conviction is inappropriate. Therefore, we affirm the trial court's sentence.

[32] Affirmed.

Bradford, J., and Altice, J., concur.