

FILED

Apr 30 2019, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew Bernlohr
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Levern Nicole Howard,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 30, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1830<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Alicia A. Gooden,<br>Judge<br><br>Trial Court Cause No.<br>49G21-1609-F2-38048 |

**Najam, Judge.**

## Statement of the Case

[1] Under Indiana Code Section 35-34-1-5(b)(2) (2018), a trial court may permit the State to amend a charging information in matters of substance "at any time . . . before the commencement of trial[] if the amendment does not

prejudice the substantial rights of the defendant." Here, two business days before the commencement of Levern Howard's trial on thirteen counts relating to dealing in and possession of illicit substances, the State moved to add four new counts of neglect of a dependent based on the manner in which Howard had stored firearms at her residence. Over Howard's objection at the beginning of her trial, the court permitted the State to amend the information and to immediately present its evidence on all counts. The court informed Howard that she could recall the State's witnesses for cross-examination on the four new counts on the second day of her trial, which had been set for eleven calendar days after the first day.

[2] We hold that the trial court abused its discretion when it permitted the State to amend the information without giving Howard a reasonable opportunity to prepare for and defend against the new counts. Accordingly, we reverse her convictions on those counts. As to Howard's additional argument on appeal that the trial court abused its discretion when it admitted into evidence certain photographs that the State had failed to produce to her during discovery, we hold that any error in the court's admission of those photographs was harmless as they were merely cumulative of other evidence. Thus, we affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[3] In September of 2016, Indianapolis Metropolitan Police Department ("IMPD") officers obtained a search warrant for 1208 King Avenue in Indianapolis. As officers were preparing to execute that warrant on September 23, they observed

Howard's husband leave the house in a vehicle with a child in the front passenger seat. Officers attempted to initiate a traffic stop of that vehicle shortly thereafter, but Howard's husband drove away at a high rate of speed, and officers chose not to pursue so as to not further endanger the child.

[4] Shortly after Howard's husband had sped away, officers at the residence observed Howard hurriedly exit the front door while talking on a phone. Howard placed some items in the trunk of a vehicle, entered the vehicle, and drove away from the residence. The officers initiated a traffic stop of Howard's vehicle and asked her to exit the vehicle several times. Howard refused to exit the vehicle. Officers then pulled her out of the vehicle. Howard forcefully tried to pull away from the officers and refused to let go of a purse she was holding.

[5] Once officers subdued Howard, they searched her purse and vehicle. In her purse, the officers discovered heroin, cocaine, and $3,440 in cash, mostly in fives, tens, and twenties. In the trunk of the car, they discovered a digital scale, a bag of "green leafy vegetation,"[1] two loaded handguns, and a loaded rifle. Tr. Vol. II at 55.

[6] Officers then executed the search warrant for the residence. There, they found three unattended children between the ages of five and nine in the family room on the first floor of the home. From that room, the officers observed in plain view green plastic baggies containing a synthetic cannabinoid, which appeared

---

[1] The actual identity of this substance was never clearly established at trial. *See* Tr. Vol. II at 58, 213.

to be packaged for individual sale. Next to the baggies was a digital scale. In the upstairs master bedroom, officers found a baggie of cocaine in a closet along with multiple large trash bags of synthetic cannabinoid.

[7] Officers seized five firearms from the residence while executing the warrant. In particular, officers seized a loaded handgun from between the mattress and box spring of a king-sized bed in the upstairs master bedroom; a loaded handgun that was inside a red plastic bag and behind the headboard of the bed in the master bedroom; an unloaded handgun and an unloaded rifle that were on top of a kitchen cabinet; and a handgun[2] that was on top of a different kitchen cabinet. During the searches of Howard's car and house, officers photographed all seized items near the locations the officers had found them prior to their seizure.

[8] On September 27, the State charged Howard with the following thirteen counts[3] ("the original counts"):

1. dealing in cocaine, as a Level 2 felony;
2. possession of cocaine, as a Level 4 felony;
3. dealing in a narcotic drug (heroin), as a Level 3 felony;
4. possession of a narcotic drug (heroin), as a Level 5 felony;
5. neglect of a dependent (Child 1[4]), as a Level 5 felony;
6. neglect of a dependent (Child 2), as a Level 5 felony;

---

[2] It is not clear if this handgun was found loaded or unloaded. *See id.* at 102.

[3] The State's original and amended charging informations used Roman numerals to enumerate the charges. For ease of readability, we use Arabic numerals to refer to the same-numbered charges.

[4] The children named in Counts 5 and 6 share the same initials, as do the children named in Counts 7 and 8.

7. neglect of a dependent (Child 3), as a Level 5 felony;
8. neglect of a dependent (Child 4[5]), as a Level 5 felony;
9. maintaining a common nuisance, as a Level 6 felony;
10. dealing in a synthetic drug lookalike substance, as a Level 6 felony;
11. possession of a synthetic drug lookalike substance, as a Class A misdemeanor;
12. carrying a handgun without a license, as a Class A misdemeanor; and
13. resisting law enforcement, as a Class A misdemeanor.

Counts 1 through 4 each alleged that, in the commission of those offenses, Howard "was in possession of a firearm." Appellant's App. Vol. II at 27-28. And Counts 5 through 8 were premised on Howard "dealing out of the house," Tr. Vol. II at 215, and thus having "left [illicit substances] where [they] could be accessed by" the child specified in each count, Appellant's App. Vol. II at 28-29.

[9] On Wednesday, May 2, 2018, more than nineteen months after it had filed the original counts, more than sixteen months after the omnibus date,[6] and just two business days before the commencement of Howard's bench trial, the State moved to amend the charging information to allege the following four new counts ("the amended counts"):

14. neglect of a dependent (Child 1), as a Level 6 felony;
15. neglect of a dependent (Child 2), as a Level 6 felony;
16. neglect of a dependent (Child 3), as a Level 6 felony; and
17. neglect of a dependent (Child 4), as a Level 6 felony.

---

[5] At closing argument, the State identified this child as the child in the vehicle with Howard's husband. *Id.* at 215.

[6] The trial court had set the omnibus date for November 28, 2016.

Each of the amended counts was premised on Howard having allegedly "endangered the dependent's life or health" by having "left firearms unsecured that could be accessed by" the child named in each count. *Id.* at 113. The next day, the trial court took the State's motion to amend under advisement and informed the parties that it would hear argument on the State's motion at the commencement of Howard's trial.

[10]     At the commencement of Howard's trial on Monday, May 7, the court asked the State to support its motion to amend. The State responded that the amended counts "do[] not add any new evidence" or "any new witnesses[;] the guns are in the [probable cause affidavit and] they've been known since the beginning." Tr. Vol. II at 4. Based on that, the State asserted that Howard would not be "prejudice[d] in anyway" by the amendment. *Id.*

[11]     Howard responded that the "theory" of the amended counts was "completely different" from the original counts and that having just "two business days before a court trial doesn't give [the] defense ample time to prepare." *Id.* at 5. Howard added:

> the probable cause affidavit says . . . that several firearms were located at the scene . . . and were recovered. That doesn't tell us anything—where they [were] recovered, whe[ther] they . . . were improperly stored . . . , and that hardly puts us on notice that there's a neglect charge especially under the fact that[,] as opposed to drugs[,] firearms in the home . . . are legal.

*Id.* at 5-6.

[12]     The trial court granted the State's motion to amend. In granting the motion, the court informed Howard that, "to be courteous" to her, it would "bifurcate" the proceedings. *Id.* at 13-14. In particular, the court stated that it would allow the State to present its evidence in support of both the original counts and the amended counts immediately and that it would allow Howard to recall and cross-examine the State's witnesses on the amended counts on the second day of trial, which the court had scheduled to begin on May 18, eleven calendar days after the first day of trial.[7] *Id.* at 13-14, 203-05. The court had previously determined that a second day of trial would be necessary anyway due to the unavailability of a forensic expert for the State.

[13]     Howard objected to the trial court's proposed procedure as "not sufficient to allow a fair trial." *Id.* at 14. In particular, she stated:

> it's not fair for [the State] to put on [its] case and then make me come back weeks later after the [evidence] has been set in the court's mind and [then] do my cross examination. So, that whole issue . . . about the guns ha[s] to be separated out because you cannot . . . unbuckle the possession of guns, the location of the guns from the issue of the new charge[s] . . . .

*Id.* at 13. The trial court overruled Howard's objection.

---

[7] On appeal, the State parrots the trial court's use of the term "bifurcate" and refers to the two different days of trial as two different "phases" of trial. Appellee's Br. at 11-12. We reject those characterizations. The trial court did not hold one distinct fact-finding phase of trial followed by a separate and distinct fact-finding phase, such as when a jury finds a defendant guilty of an offense and the court, thereafter, finds the defendant to be a habitual offender. Rather, the court here simply held one trial over two days.

[14]     During the ensuing two-day trial, the State substantially relied on the testimony of the various IMPD officers involved in the search of Howard's vehicle and residence and the seizure of the evidence from those locations.  The State's "physical" evidence consisted almost exclusively of photographs of the illicit substances and firearms taken at the two scenes.  Howard objected to the State's admission of some of those photographs on the ground that the State had not produced them during discovery, and at the start of the second day of trial she also renewed her objection to the amended counts.  The court overruled those objections.

[15]     Howard's apparent defense strategy at trial was to hold the State to its burden of proof, especially through cross-examination of the State's witnesses.  As to the amended counts, on the second day of trial Howard cross-examined IMPD's lead investigator[8] as follows:

> Q     So you found some firearms in the kitchen . . . ?
>
> A     Yes.
>
> Q     Okay.  And you found a firearm . . . in an adult's bedroom?
>
> A     I believe so, yes.

---

[8] Howard did not cross-examine any other witnesses on the amended counts.

Q      And one firearm was in a plastic bag hidden behind a
headboard of the king size bed?

A      That's possible.  I don't recall that one, but, yes.

Q      And the other firearm you found inside the home was
underneath the mattress of the king size bed?

A      I believe there was one found there as well.

Q      So you didn't find any guns that were sitting out in the
open, correct?

A      I don't recall.  I don't recall where each firearm . . . [was]
located, sir.

Q      You didn't find any firearms where those children were
located, right?

A      I don't recall finding one in their immediate vicinity, no.

Q      So as best to your recollection there w[ere] no firearms
within the reach of those children?

A      To the best of my recollection, no.

Q      There were no firearms around open, anywhere in the
house, to the best of your recollection?

A      . . . I don't recall where each firearm was located, sir . . . .

Q      And you [have] served other search warrants?

A      Yes.

Q      And you've gone into other homes and located firearms?

A      Yes.

Q      And is that unusual . . . to find . . . a firearm out in the open . . . ?

A      No.

Q      That's not unusual, right?

A      No, it's not.

* * *

Q      There is no requirement . . . to keep [a] gun in a gun safe, right?

A      No.

Q      And you have a constitutional right to self-defense, including the right to have a weapon in your home unless you're excluded by law, right?

A      Yes.

Q      Okay. And you're also allowed, as a constitutional right, to defend yourself, to have ready access to a weapon, right?

A      Yes.

*Id.* at 207-11.

Following the bench trial, the court found Howard guilty on all counts except Count 3. The court then entered judgment of conviction against Howard on all counts except Count 2 and Count 11. The court sentenced Howard to an aggregate term of twenty years, with twelve years executed and eight years suspended. This appeal ensued.

# Discussion and Decision

### Issue One: Motion to Amend the Charging Information

Howard first appeals the trial court's decision to permit the State to amend the charging information. We generally review the trial court's decision on whether the permit an amendment to a charging information for an abuse of discretion. *Ramon v. State*, 888 N.E.2d 244, 252 (Ind. Ct. App. 2008); *see also State v. Thakar*, 82 N.E.3d 257, 259 (Ind. 2017) (reviewing the trial court's order to dismiss an information for an abuse of discretion). An abuse of discretion occurs when the trial court's judgment is "clearly against the logic and effect of the facts and circumstances before it or is contrary to law." *Waterfield v. Waterfield*, 61 N.E.3d 314, 323 (Ind. Ct. App. 2016), *trans. denied*. But, insofar as Howard's argument on appeal is that the amendment to the charging information violated her constitutional rights to due process, that argument presents a question of law that we review *de novo*. *E.g.*, *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017).

[18]     Under Indiana Code Section 35-34-1-5(b)(1), the default timeframe for the State to seek to amend a charging information in a matter of substance is up to "thirty (30) days . . . before the omnibus date"[9] if "the defendant is charged with a felony." The State properly does not suggest on appeal that the amended counts here were anything other than amendments of substance. *See, e.g.*, *Mays v. State*, ___ N.E.3d ___, No. 18A-PC-2071, 2019 WL 1217757, at *7 (Ind. Ct. App. Mar. 15, 2019) (stating that adding "an entirely new charge to the charging information . . . is patently [an amendment] of substance"), *not yet certified*. While the original neglect counts and the amended neglect counts were derived from the same statute, that does not mean that the amended counts were merely amendments in form to the original counts.[10] Rather, the amended counts added four wholly new offenses based on facts and evidence other than that underlying the original counts.

[19]     In any event, as the State's motion to amend the information here was nowhere close to the omnibus date, the State moved to amend the information not under Indiana Code Section 35-34-1-5(b)(1) but instead under Indiana Code Section 35-34-1-5(b)(2). Under that provision, the trial court may permit the State, following the State's written notice to the defendant, to make a late amendment

---

[9] For felony criminal cases with no speedy-trial issues, the trial court, at the initial hearing, must set an "omnibus date" that is "no earlier than forty-five (45) days and no later than seventy-five (75) days after the completion of the initial hearing," unless the parties agree to a different date. I.C. § 35-36-8-1(a). "The purpose of the omnibus date is to establish a point in time from which various deadlines . . . are established." I.C. § 35-36-8-1(b). "Once the omnibus date is set," it generally "remains the omnibus date . . . until final disposition . . . ." I.C. § 35-36-8-1(d).

[10] Indeed, had the State thought this an even viable argument in the trial court, it would have moved to amend the information under Indiana Code Section 35-34-1-5(c), not Indiana Code Section 35-34-1-5(b).

to an information in a matter of substance "at any time . . . before the commencement of trial[] if the amendment does not prejudice the substantial rights of the defendant. . . ."  I.C. § 35-34-1-5(b)(2).

[20]   As the Indiana Supreme Court has explained:

> A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. *Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.*

*Erkins v. State*, 13 N.E.3d 400, 405-06 (Ind. 2014) (emphasis added; citations and quotation marks omitted).  The right to a reasonable opportunity to prepare for and defend against the charges is a hallmark of "[t]he right of an accused . . . to due process."  *Saylor v. State*, 559 N.E.2d 332, 335 (Ind. Ct. App. 1990) (citing *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)), *trans. denied*. And that right implicates a criminal defendant's Sixth Amendment right to effective assistance of counsel—a counsel who is not provided with sufficient time to give "effective aid in the preparation and trial of the case" is constructively no counsel at all.[11]  *Powell v. Alabama*, 287 U.S. 45, 71-72 (1932).

[21]   That said, there is no fixed "minimum period of time which must be allowed by the court in every case" for the preparation of the defense.  *Lloyd v. State*, 241

---

[11]  The actual or constructive denial of counsel is structural error.  *See Leach v. State*, 699 N.E.2d 641, 643 n.2 (Ind. 1998) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991)).

Ind. 192, 199, 170 N.E.2d 904, 907 (1960); *see also Avery v. Alabama*, 308 U.S. 444, 446 (1940). Rather, "[t]he adequacy of time allowed for preparation must be determined on a case by case basis[] considering the totality of the circumstances, including the complexity of the issues, the necessity for pre-trial motions, the necessity to interview witnesses[,] and whether the defendant is available to assist in the preparation of [the] defense." *Jones v. State*, 175 Ind. App. 343, 346, 371 N.E.2d 1314, 1316 (1978). "The spirit of these constitutional provisions requires that an accused must have something more than a perfunctory representation." *Wilson v. State*, 222 Ind. 63, 80, 51 N.E.2d 848, 855 (1943).

[22] Recent examples from our Court provide representative circumstances in which we have affirmed pretrial, but post-omnibus-date, amendments of substance to an information. In particular, we have held such amendments permissible in the following contexts:

- where the State's notice of the proposed amendment was given to the defendant nearly four months prior to trial and the anticipated defense was an equally available alibi defense, *Mays*, ___ N.E.3d ___, 2019 WL 1217757, at *8-9;
- where the amendment to the information was "two months before the commencement of the trial and three months before the defense presented its case in chief"; the State added to a count of battery a count of burglary and a count of intimidation, which additional counts arose from the same "time [and] place" as the original count; and the defense strategy was to argue that the victim, which was the same for all counts, had invited the defendant into her residence and sustained her injuries when she tripped over a dog, which argument "was equally applicable"

to the original and the amended counts, *Barnett v. State*, 83 N.E.3d 93, 102 (Ind. Ct. App. 2017), *trans. denied*;

- where the amendment elevated an aggravated battery offense to murder following the victim's death, the trial did not begin until more than two months after the amendment, and the defendant's defense that "he was not at the scene and did not participate in [the] beating" would "not change," *Shaw v. State*, 82 N.E.3d 886, 897 (Ind. Ct. App. 2017), *trans. denied*;

- where the State filed its motion to amend more than eight months before the beginning of the trial, which we recognized as "a significant amount of time to prepare a defense," *Mannix v. State*, 54 N.E.3d 1002, 1010 (Ind. Ct. App. 2016); and

- where the State moved to amend the charging information one week before trial to correct an error in the date of an alleged molestation offense, which "did not deprive [the defendant] of" his defense of challenging the victim's recollection of the alleged event, *Gaby v. State*, 949 N.E.2d 870, 875 (Ind. Ct. App. 2011).

[23] Nothing about the instant case is analogous to cases in which we have affirmed the trial court's decision to allow a post-omnibus-date amendment of substance to an information. Counting from the day of the State's notice to Howard's first opportunity to cross-examine the State's witnesses on the amended counts, the totality of time Howard had to prepare for and then execute her defense on the amended counts was a total of sixteen calendar days. That is well short of the more common scenario of two or more months; it certainly is not long enough to presume, as we did in *Mannix* and other cases, that the defendant had ample time to prepare her defense to the amended counts. And the sixteen days here are one day more than half the time Indiana Code Section 35-34-1-5(b)(1) requires the State to provide to the defendant *prior* to the omnibus date, which of course often results in far more time before trial.

[24] Further, while the amended counts arose out of the same time and place as the original counts, we are not persuaded that the amended counts were premised on the same underlying facts as the original counts. Rather, the original counts nearly all related to Howard's alleged dealing in and possession of illicit substances,[12] and the firearms were only relevant to the original counts as either enhancing facts (under Counts 1 through 4) or to her alleged carrying without a license (under Count 12). At no point prior to the State's motion to amend the information did Howard have any reason to think that the State would seek to use the firearms in any other way or in support of any other possible offenses. That is, nothing about the facts underlying the original counts would have impelled a reasonable defense attorney to investigate further the facts on which the amended counts were premised. Indeed, the explicitly limited use of the firearms in the original counts may well have led Howard to conclude that the State had decided *not* to pursue any other firearm-related offenses and, thus, that there was no further preparation or defense to be had for any such hypothetical offenses.

[25] Significantly, Howard's apparent defense strategy was not, as in some cases where we have affirmed late amendments to an information, a defense that had its own factual basis, such as an alibi defense or a claim of self-defense. Neither was her defense strategy to make a specific challenge to a specific witness's

---

[12] Indeed, and again, the original neglect counts were explicitly premised on Howard having "left [illicit substances] where [they] could be accessed by" the child specified in each count. Appellant's App. Vol. II at 28-29.

testimony, such as the victim's recollection, which defense would have been equally applicable to both the original counts and the amended counts. Rather, her apparent defense strategy was to hold the State to its burden of proof, especially through cross-examination of the State's witnesses.

[26] As the amended counts were not based on the same underlying facts as the original counts, the late amendment substantially affected her defense in that she had no reasonable time to engage in pretrial investigation of the amended counts in order to effectively prepare for cross-examining the State's witnesses on them. We recognize that, on the second day of her trial, Howard asked IMPD's lead investigator the basic and obvious questions of whether the firearms were "within the reach of th[e] children" during the search and whether the investigator knew of a requirement to keep lawfully held firearms in a gun safe. Tr. Vol. II at 208. But that limited inquiry alone does not demonstrate that Howard received all the representation and process that she was due. *See Wilson*, 51 N.E.2d at 855.

[27] Indeed, as Howard argued to the trial court, the timing of the State's motion to amend prevented her from investigating prior to trial any number of possible lines of inquiry that might have been relevant to her defense against the amended counts, such as: whether the children knew of any firearms in the residence; whether the children were ever in the master bedroom, where the only known loaded firearms were found; whether the children were capable of lifting a king-sized mattress to access one of those loaded firearms or either moving or getting behind the headboard of that bed to access the other; whether

any of the children had a propensity or history of climbing on the kitchen cabinets, where the other firearms were found; whether the children had any training or instruction in the safe handling of firearms; whether the children knew how to load an unloaded firearm; whether the firearms had any safety features and whether those features were engaged at the time of their seizure; whether the firearms inside the house were even operable; or where the firearms inside the house were located at the time Child 4 had left the residence. Howard also had no reasonable opportunity to investigate whether state or federal legal authority might support her opposition to the amended counts.

[28] Nonetheless, both the State and the dissent contend that Howard should have seen the amended counts coming because she knew from the beginning that the firearms were in the residence with the children. We reject that argument.[13] The mere fact that firearms were present in her residence did not put Howard on permanent notice of any possible firearms-related offenses the State might have charged. To the contrary, again, the State's explicitly limited identification of the firearms to unrelated offenses under the original counts likely dispelled any concern Howard would have had of disparate, other charges that the State might have brought based on the firearms. And insofar as the State argues on appeal that sixteen (or fewer) days was enough by itself to presume that Howard would have sufficient time to prepare her defense to the

---

[13] The State's argument that Howard should have seen the amended counts coming cuts both ways—the State too had the probable cause affidavit from the beginning of the case yet waited until two business days before the commencement of Howard's trial to include the amended counts in the information.

amended counts, as explained above that argument is not at all consistent with our case law.

[29] Finally, although not required of the State under Indiana Code Section 35-34-1-5(b)(2), we nonetheless note that the State had no good cause for having waited until nearly the last minute to move to amend the information. There were no ongoing plea negotiations; there was no pending investigation; and there was no newly discovered evidence. Indiana Code Section 35-34-1-5(b) contemplates that amendments to an information will be thirty days prior to the omnibus date, but the statute permits late deviations when they do not prejudice the substantial rights of the defendant. Such late deviations are the exception, not the rule. And here, again, the information had been pending for sixteen months after the omnibus date before the State moved to amend the information two business days before the start of Howard's trial. The State's inability to identify a good cause for its late amendment request reeks of surprise and gamesmanship, which tactics our Supreme Court has emphasized "no longer have any place in our system of justice." *Wright v. Miller*, 989 N.E.2d 324, 327 (Ind. 2013) (quoting *Whitaker v. Becker*, 960 N.E.2d 111, 115 (Ind. 2012)).

[30] The default deadline that amendments to an information be made no later than thirty days prior to the omnibus date is there for a reason, which is illustrated by this case: to assure that a defendant's rights to a fair trial are not impaired. The defendant's rights include adequate time to prepare a defense. An exception to the statutory deadline is permissible only where the State, which bears the burden of proof on its motion to amend, can demonstrate that a late

amendment does not compromise the defendant's rights. Here, however, the facts stand in stark contrast to those cases in which we have allowed the State to proceed with an amendment of substance to a charging information after the statutory deadline. The State's motion to amend sought to add counts that were factually distinct from the original counts and gave Howard only sixteen calendar days to fully investigate and to prepare her defense against the amended counts. And Howard's apparent defense strategy of holding the State to its burden of proof, especially through cross-examination, was substantially impaired by the timing of the State's amendment. We hold that the trial court abused its discretion when it permitted the State to amend the charging information, and we reverse Howard's convictions under the amended counts.

### Issue Two: Discovery of Photographs

[31] Howard also contends on appeal that her convictions on the original counts must be reversed because the trial court abused its discretion when it admitted certain photographs into evidence that the State had failed to produce to Howard during discovery. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). However, the erroneous admission of evidence that is merely cumulative of other evidence is harmless error. *Pierce v. State*, 29 N.E.3d 1258, 1268 (Ind. 2015).

[32] As an initial matter, Howard frames this issue around *Brady v. Maryland*, 373 U.S. 83, 87 (1963), in which the Supreme Court of the United States held that "the suppression by the prosecution of evidence *favorable to the accused* upon

request violates due process where the evidence is material either to guilt or to punishment . . . ." (Emphasis added.) Thus, in order to prevail on a *Brady* claim, the defendant must establish, among other things, that the evidence "was favorable to the defense." *Stephenson v. State*, 864 N.E.2d 1022, 1056-57 (Ind. 2007). The photographs Howard complains of were not favorable to her. Thus, there is no *Brady* issue in this appeal.

[33]     In any event, the complained-of photographs were merely cumulative of other evidence presented by the State. Indeed, the State established its case through the testimony of several officers and their personal observations at the scenes of Howard's vehicle and the house. The photographs were merely cumulative of those personal observations. Accordingly, any error in their admission was harmless, and we affirm Howard's convictions on the original counts.

## *Conclusion*

[34]     In sum, while we affirm Howard's convictions on the original counts, we hold that the trial court abused its discretion when it permitted the State to add entirely new and unrelated offenses to the information at the commencement of Howard's trial. Thus, we reverse her convictions on the amended counts, Counts 14 through 17, and we remand with instructions for the trial court to vacate those convictions and the corresponding sentences.[14]

---

[14] As Howard's sentences on the amended counts were ordered to run concurrently with her other sentences, her aggregate sentence is not affected by our disposition.

Affirmed in part, reversed in part, and remanded with instructions.

Pyle, J., concurs.

Altice, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Levern Nicole Howard,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>18A-CR-1830 |

**Altice, Judge, concurring in part and dissenting in part.**

[36]     I agree with the majority that admission of the photographs was cumulative of other evidence, and therefore harmless. I respectfully dissent, however, from the majority's determination that the trial court abused its discretion in permitting the State to amend the charging information. The amended charging information added four new charges of neglect of a dependent that mirrored the four original neglect charges except for the fact that the new charges alleged the presence and accessibility of unsecured firearms, as opposed to illicit drugs. Given the other charges Howard faced—especially the fact that the presence of firearms was used to enhance certain offenses—she cannot now claim she was surprised by the new charges or the evidence giving rise thereto.

[37]     Moreover, as the majority notes, Howard's "apparent defense strategy was to hold the State to its burden of proof, especially through cross-examination of the State's witnesses." *Id*. at 17. Under these circumstances, I think sixteen days was more than sufficient time for counsel to prepare a defense to the new charges. Indeed, Howard's defense to the separate groups of neglect charges was essentially the same. There was no new evidence required and no need for additional witnesses to support or defend against the new charges. To that end, I am not persuaded that the late amendment substantially affected Howard's defense. *See Gaby v. State*, 949 N.E.2d 870, 875 (Ind. Ct. App. 2011) (holding that trial court did not abuse its discretion in permitting the State to amend the charging information one week before trial to correct an error in the date of an alleged molestation offense because such "did not deprive [the] defendant of" his defense of challenging the victim's recollection of the alleged offense). I would affirm Howard's convictions in their entirety.