

FILED

Nov 30 2020, 8:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher J. Evans
Dollard Evans Whalin LLP
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chad P. Hobbs,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 30, 2020

Court of Appeals Case No.
19A-CR-909

Appeal from the
Madison Circuit Court

The Honorable
Mark K. Dudley, Judge

Trial Court Cause No.
48C06-1512-F1-2166

**Vaidik, Judge.**

# Case Summary

[1]     Fourteen days before trial and three years after the omnibus date, the trial court allowed the State, over the defendant Chad P. Hobbs's objection, to amend the

charging information to include three new counts of child molesting. While the new charges involved the same victims, the State added a Class A felony child-molesting charge relating to one of the victims for a time period that was not previously charged and a Level 1 felony child-molesting charge relating to the other victim when the prior charging information set forth only a Level 4 felony child-molesting charge for her.

[2] Finding the trial court abused its discretion in allowing the State to amend the charging information so close to trial without also granting a continuance, we reverse Hobbs's convictions on the added counts and remand with instructions for the court to vacate those convictions and the corresponding sentences. We affirm the trial court in all other respects.

## Facts and Procedural History

[3] Laura Aschliman is the mother of M.S., born in December 2008, and K.H., born in May 2010. Travis Smith is the father of M.S., and Hobbs is the father of K.H. After Laura and Travis got divorced in 2009, Laura married Hobbs in 2010, and they lived with M.S. and K.H. in Elwood. In February 2014, Hobbs filed for divorce. Thereafter, Laura moved out, leaving K.H. with Hobbs. Also in February 2014, Travis was awarded custody of M.S. After Travis was awarded custody of M.S., he sometimes dropped her off at Hobbs's house so the girls could play.

[4] On December 18, 2015, a teacher at Elwood Elementary was on lunch duty when she was told by students that M.S. (who was six years old and about to turn seven) and a boy were showing each other their private areas. The teacher sent M.S. and the boy to the principal's office. The principal spoke to M.S., who was "very emotional" and cried. Tr. Vol. II p. 80. When the discussion turned "toward a sexual matter of [M.S.] seeing [an adult's] body parts," the principal stopped the discussion and called the school-resource officer. *Id.* at 81, 87. An Elwood Police Department officer responded to the school and spoke to M.S. Thereafter, the officer contacted the Department of Child Services and referred the case to a detective.

[5] Later that same day, M.S. and K.H. were interviewed at Kids Talk in Anderson. Both children also underwent sexual-assault examinations, M.S. on December 18 with nurse Holly Renz and K.H. on December 22 with nurse Lori Wilson. The results of both examinations were "normal," meaning there was no physical evidence M.S. or K.H. had been molested. Tr. Vol. III pp. 27, 163. According to Nurse Renz, M.S. told her Hobbs had molested her. *Id.* at 169. M.S. was seen again on December 22 for a mental-health evaluation because she had been experiencing auditory hallucinations and night terrors sporadically for two years. *Id.* at 56, 175. In addition, M.S. was interviewed a second time at Kids Talk in February 2016.

[6] On December 22, 2015, the State charged Hobbs with Count I: Level 1 felony child molesting (sexual intercourse or other sexual conduct with K.H. between July 1, 2014, and December 18, 2015), Count II: Level 1 felony child molesting

(sexual intercourse or other sexual conduct with M.S. between July 1, 2014, and December 18, 2015), and Count III: Level 4 felony incest (K.H.). At the initial hearing, the omnibus date was set for February 28, 2016.[1] Appellant's App. Vol. II pp. 4, 38. On February 2, the State dismissed the incest charge and filed an amended charging information setting forth these counts: Count I: Level 1 felony child molesting (sexual intercourse or other sexual conduct with M.S. between July 1, 2014, and December 18, 2015) and Count II: Level 4 felony child molesting (fondling or touching of K.H. between July 1, 2014, and December 18, 2015).

[7] On February 5, 2019—just twenty days before trial was set to begin and nearly three years after the omnibus date—the State filed a second amended charging information under Indiana Code section 35-34-1-5(b), which provides a charging information may be amended in substance at any time (1) up to thirty days before the omnibus date for a felony or (2) before the commencement of trial "if the amendment does not prejudice the substantial rights of the defendant." Specifically, the second amended charging information sets forth these charges (the added charges are in bold):

---

[1] For felony cases, the trial court, at the initial hearing, must set an "omnibus date" that is "no earlier than forty-five (45) days and no later than seventy-five (75) days after the completion of the initial hearing," unless the parties agree to a different date. Ind. Code § 35-36-8-1(a). "The purpose of the omnibus date is to establish a point in time from which various deadlines . . . are established." *Id.* at (b). "Once the omnibus date is set," it generally "remains the omnibus date for the case until final disposition . . . ." *Id.* at (d).

**Count I: Class A felony child molesting (sexual intercourse or deviate sexual conduct with M.S. between December 23, 2012, and June 30, 2014)**

Count II: Level 1 felony child molesting (sexual intercourse or other sexual conduct with M.S. between July 1, 2014, and December 18, 2015)

**Count III: Level 4 felony child molesting (fondling or touching of M.S. between July 1, 2014, and December 18, 2015)**

**Count IV: Level 1 felony child molesting (sexual intercourse or other sexual conduct with K.H. between July 1, 2014, and December 18, 2015)**

Count V: Level 4 felony child molesting (fondling or touching of K.H. between July 1, 2014, and December 18, 2015)

*See* Appellant's App. Vol. II pp. 54-58. Relevant here, the new charges included Class A felony child molesting for M.S. for a time period that was not previously charged and Level 1 felony child molesting for K.H. when the first amended charging information set forth only Level 4 felony child molesting for her.

[8] Hobbs objected to the new charges, and the trial court held a hearing on February 11, 2019, fourteen days before trial. At the hearing, the prosecutor argued Hobbs's substantial rights were not prejudiced by the added charge of Level 1 felony child molesting for K.H. because the prosecutor told defense counsel in 2017 that the facts supported a Level 1 felony charge for her. The

prosecutor argued Hobbs's substantial rights were not prejudiced by the added charge of Class A felony child molesting for M.S. (which added the new time period of December 23, 2012, to June 30, 2014) because the probable-cause affidavit alleged M.S. disclosed in her December 2015 Kids Talk interview that the molestations began when she was "4 or 5 years old," and M.S. turned four in December 2012. *Id.* at 32. Hobbs argued his substantial rights were prejudiced because (1) the case had been pending for over three years yet the State sought to amend the charges just twenty days before trial and (2) the State added three counts, one of which "opened up a . . . whole new time period." Tr. Vol. I p. 8. Hobbs claimed two weeks was not enough time "to investigate that time period and the new charges" or "give him a reasonable opportunity to prepare and defend against the charges." *Id.* Finding "it's not a high hurdle for the State" to amend a charging information after the omnibus date, the trial court ruled Hobbs's substantial rights were not prejudiced because "[w]e have the same victims, we have the same nature of conduct alleged." *Id.* at 17, 18. Hobbs requested a continuance, which the trial court denied. *Id.* at 19.

[9] A four-day jury trial began on February 25, 2019. Before trial started, the trial court held a hearing on Hobbs's motion to introduce evidence under Indiana Evidence Rule 412. Specifically, Hobbs wanted to introduce evidence that M.S. experienced "sexual abuse . . . at the hands of her mother," Laura. Tr. Vol. II p. 34. According to Hobbs, M.S. revealed this abuse during her second interview at Kids Talk. The court said it could not make a ruling until it heard the evidence at trial.

[10]  M.S., then ten years old, testified that when she was five and six years old her father would take her to Hobbs's house. Tr. Vol. III pp. 91-92. M.S. said when Hobbs was alone with her in his bedroom, he would tell her to "get undressed" and then he would "get undressed." *Id.* at 73. According to M.S., on at least two of these occasions, Hobbs put his "wiener" in her "vagina," which hurt "a lot." *Id.* at 74. On another occasion, Hobbs had M.S. shower with him, and he showed her his "wiener again." *Id.* at 75. M.S. also testified about a time when she witnessed K.H. perform oral sex on Hobbs in the kitchen in exchange for a "treat." *Id.* at 88.

[11]  M.S. admitted that when she was interviewed at Kids Talk in December 2015, she did not tell the truth about some things. Specifically, she said she told the interviewer that K.H. was in the bedroom and saw Hobbs do these things to her, which was not true. M.S. also said she told the prosecutor that Hobbs put his penis in her mouth, which also was not true. When asked why she lied, M.S. said she "really d[id]n't know." *Id.* at 87. However, M.S. said she was telling the truth in court. *Id.*

[12]  K.H., then eight years old, testified that when she was five years old, she lived with Hobbs. K.H. stated that on "[m]ore than one" occasion she was with Hobbs in his bedroom while he was watching "a very inappropriate movie." Tr. Vol. II p. 238. K.H. testified that on these occasions, Hobbs "force[d]" her "to suck on his pee-pee" while he watched the movie. *Id.* K.H. stated that more than once, she saw Hobbs take M.S. into his bedroom and lock the door.

[13] Similar to M.S., K.H. admitted that when she was interviewed at Kids Talk in December 2015, she denied being forced to perform oral sex on Hobbs. When asked why she lied, K.H. said she was "young" and "didn't know what to say." *Id.* at 242. However, K.H. said she was telling the truth in court. *Id.*

[14] In addition, Travis testified. At the end of his testimony, a juror submitted a question to the trial court asking if M.S.'s behavior was any different after she visited Hobbs and, if so, in what way. Tr. Vol. III pp. 136-37. Hobbs objected to the question, but the court asked it. Travis answered that M.S. experienced bedwetting and night terrors. Following Travis's answer, a bench conference was held. The court ultimately ruled the juror's question to Travis "was improperly given" and admonished the jury:

> It was necessary that I discuss an objection with the attorneys outside of your presence. I have now sustained an[] objection and ruled as a matter of Indiana Law that the Juror question and answer just asked of [Travis] was improperly placed before you. **Therefore you are now ordered and admonished to disregard entirely such question and answer.** It is not to be mentioned or considered by you in any way during the course of this trial and particularly shall not be mentioned or considered in your deliberations or in any discussions in or outside of the Jury room. You are each charged to bring any violation of this order to the Court's attention through the Bailiff.

*Id.* at 145, 152 (emphasis added). Hobbs did not object to the sufficiency of this admonishment or move for a mistrial.

[15] Finally, Nurse Renz testified (1) "normal" findings "happen in about ninety five [percent] (95%) of the . . . pediatric patients that we examine" because "children delay disclosure" and (2) children know their abusers "around eighty percent (80%) of the time." *Id.* at 163, 173. Nurse Wilson testified similarly. *See id.* at 28, 30.

[16] Because the trial court did not allow Hobbs to present evidence that Laura sexually abused M.S., he made an offer of proof with M.S. near the end of trial. During the offer of proof, M.S. testified her mother taught her how to "touch herself." *Id.* at 225. In addition, M.S. recalled saying during her second interview at Kids Talk that if she told the truth, her mother would go to jail. *Id.* at 228. Defense counsel then offered the video of M.S.'s second interview. *See* Ex. C.

[17] The jury found Hobbs guilty as charged. At the sentencing hearing, the trial court found three aggravators: (1) the nature and circumstances of the offenses in that there was "more than one (1) event"; (2) there were multiple counts; and (3) there were multiple victims. Tr. Vol. IV p. 155. The court found as a mitigator that Hobbs had no criminal history and had led a law-abiding life. The trial court sentenced Hobbs to thirty-five years on Count I, thirty-five years on Count II, nine years on Count III, thirty-five years on Count IV, and nine years on Count V. The court ordered the sentences for the counts relating to M.S.—Counts I, II, and III—to be served concurrently and the sentences for the counts relating to K.H.—Counts IV and V—to be served concurrently. The

court then ordered each set of sentences to be served consecutively, for a total sentence of seventy years.

[18] Hobbs now appeals.

# Discussion and Decision

## I. Amendment of Charging Information

[19] Hobbs first contends the trial court erred in allowing the State to amend the charging information two weeks before trial. We review a trial court's decision on whether to permit an amendment to a charging information for an abuse of discretion. *Howard v. State*, 122 N.E.3d 1007, 1013 (Ind. Ct. App. 2019), *trans. denied*.

[20] Indiana Code section 35-34-1-5(b) provides:

> The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at any time:
>
>> (1) up to:
>>
>>> (A) thirty (30) days if the defendant is charged with a felony; or
>>>
>>> (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

before the omnibus date; or

(2) before the commencement of trial;

if the amendment does not prejudice the substantial rights
of the defendant. When the information or indictment is
amended, it shall be signed by the prosecuting attorney or
a deputy prosecuting attorney.

This provision contemplates that an amendment to a charging information will be made thirty days before the omnibus date, but it "permits late deviations when they do not prejudice the substantial rights of the defendant." *Howard*, 122 N.E.3d at 1017. However, "late deviations are the exception, not the rule." *Id.* As our Supreme Court has explained:

A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge; and, if the amendment does not affect any particular defense or change the positions of either of the parties, it does not violate these rights. **Ultimately, the question is whether the defendant had a reasonable opportunity to prepare for and defend against the charges.**

*Erkins v. State*, 13 N.E.3d 400, 405-06 (Ind. 2014) (cleaned up, emphasis added), *reh'g denied*. While there is no fixed "minimum period of time which must be allowed by the court in every case" for preparing a defense, the "**common scenario [is] two or more months**." *Howard*, 122 N.E.3d at 1014, 1015 (emphasis added).

[21]     First, we note the amendments in this case did not merely clarify details of the existing charges but added entirely new charges. And the amendments were sought nearly three years after the omnibus date and just twenty days before trial with no indication in the record as to why the State waited so long to file the new charges. Notably, the State does not claim plea negotiations were ongoing before or near the time when it filed the second amended charging information. *See id.* at 1017 ("[W]e nonetheless note that the State had no good cause for having waited until nearly the last minute to move to amend the information. There were no ongoing plea negotiations; there was no pending investigation; and there was no newly discovered evidence."). The new charges included Class A felony child molesting for M.S. for a time period that was not previously charged and Level 1 felony child molesting for K.H. when the first amended charging information set forth only Level 4 felony child molesting for her. As for the Class A felony charge for M.S., adding a new time period, at a minimum, obligated defense counsel to look into the circumstances surrounding the new allegations. And as for the Level 1 felony charge for K.H., although the State claims the prosecutor told defense counsel in 2017 that the facts supported a Level 1 felony charge, this does not mean Hobbs was prepared to defend against a Level 1 felony charge at trial. *See id.* at 1016 ("The mere fact that firearms were present in [Howard's] residence did not put [her] on permanent notice of any possible firearms-related offenses the State might have charged."). This is especially so when the State initially charged Hobbs with a Level 1 felony for K.H. but amended it two months later to a Level 4 felony.

[22] We acknowledge Hobbs's primary defense at trial was M.S. and K.H. were lying, which would apply regardless of the charges. Even assuming his defense remained the same, Hobbs should have been given the opportunity to see if there was anything about the new allegations that supported his theory the victims were lying. Hobbs cannot be faulted for not being able to explain to the trial court how a continuance would assist in his defense, as he did not know what he did not know. An investigation was fundamental. And fourteen days before trial was an insufficient amount of time to conduct one.

[23] Additionally, we think it is too broad a stroke to say if a defendant's defense remains the same, then the State can add new charges up to the time of trial. Since the defense in child-molesting cases is often that the victim is lying, the only limitation on the State filing additional child-molesting charges would be the trial date itself. This would not be a low hurdle for the State (as the trial court said); it would be no hurdle at all.

[24] As we said in *Howard*, although there is no minimum time period that trial courts must allow for preparing a defense, the "common scenario [is] two or more months." Here, fourteen days was not enough time for Hobbs to investigate and prepare for and defend against the new charges. Hobbs's substantial rights were prejudiced. If the trial court thought the State was entitled to amend the charging information this close to trial, it should have granted Hobbs's motion to continue. We therefore reverse Hobbs's convictions on the added counts—Counts I, III, and IV—and remand with instructions for

the court to vacate those convictions and the corresponding sentences. *See id.* at 1018.[2]

# II. Evidence Rule 412

Hobbs next contends the trial court erred by not allowing him to cross-examine M.S. about statements she made during her second interview at Kids Talk about her mother teaching her how to touch herself.[3] Evidence Rule 412 provides, in relevant part:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
>> (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or
>>
>> (2) evidence offered to prove a victim's or witness's sexual predisposition.

---

[2] Hobbs also argues his convictions for Counts II and III (Level 1 felony and Level 4 felony child molesting of M.S.) and Counts IV and V (Level 1 felony and Level 4 felony child molesting of K.H.) constitute double jeopardy. However, given our decision to reverse Counts I, III, and IV, we do not need to address this argument.

[3] Hobbs relies on *Redding v. State*, 844 N.E.2d 1067 (Ind. Ct. App. 2006), *reh'g denied*, in support of his argument. *Redding* recognizes that the sexual behavior of a witness or victim may be admitted if the exclusion of the evidence violates a constitutional right of the defendant. The *Redding* exception is limited to admitting evidence after the State has opened the door. After *Redding* was decided, Evidence Rule 412 was amended effective January 1, 2014, to add a provision allowing sexual-behavior evidence when failing to do so would violate a defendant's constitutional rights. Because the new Evidence Rule 412(b)(1)(C) is more comprehensive than the *Redding* exception, we incorporate Hobbs's *Redding* argument under our analysis of Evidence Rule 412(b)(1)(C).

(b) Exceptions.

(1) Criminal Cases. The court may admit the following evidence in a criminal case:

**(A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence**;

(B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

**(C) evidence whose exclusion would violate the defendant's constitutional rights.**

(Emphases added).

[26] This Court has held that Evidence Rule 412(b)(1)(A) only applies when "physical evidence" is presented. *See Killian v. State*, 149 N.E.3d 1189, 1191 (Ind. Ct. App. 2020) ("Rule 412(b)(1)(A) only allows evidence of other sexual behavior that—itself—could have 'produced' some physical evidence that is presented in the case."); *Pribie v. State*, 46 N.E.3d 1241, 1248 (Ind. Ct. App. 2015) ("[The State] did not put before the jury any lacerations, or bruises, or any other physical evidence and claim that they were the result of Pribie's conduct. If it had done so, then Pribie would have the right, under this exception, to posit that [the victim's] encounter with [someone else] produced

that evidence."), *trans. denied*. As Hobbs himself acknowledges on appeal, Nurse Renz testified the result of M.S.'s sexual-assault examination was "normal." Because the State did not present any physical evidence that M.S. was molested, Hobbs was not entitled to introduce evidence under Evidence Rule 412(b)(1)(A) that Laura taught M.S. how to touch herself.

[27] But even had physical evidence been presented, the evidence Hobbs seeks to admit does not fall under the exception in Evidence Rule 412(b)(1)(A). As defense counsel acknowledged at oral argument, Hobbs did not want to present evidence that Laura taught M.S. how to touch herself "to prove that someone other than the defendant" molested M.S. Rather, he wanted to present this evidence to show how the events in this case unfolded (with M.S. showing her private area at school). This is not the purpose of Evidence Rule 412(b)(1)(A).

[28] As for Evidence Rule 412(b)(1)(C), the trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination. *Pribie*, 46 N.E.3d at 1248. Admission of evidence to prove a victim engaged in other sexual behavior "may . . . be required when the trial court restricts a defendant from giving his own account of the events at issue." *Id.* (quotation omitted). Hobbs makes no claim he was restricted from giving his own account of the events at issue. The record reveals he fully, adequately, and fairly cross-examined M.S. about her child-molesting allegations. Hobbs was only prevented from presenting evidence that Laura taught M.S. how to touch herself, which did not relate to the allegations he put his "wiener" in M.S.'s "vagina." Because Hobbs had every opportunity to

cross-examine M.S. about her child-molesting allegations, he was not "restrict[ed] . . . from giving his own account of the events at issue," and therefore the evidence did not fall under the exception in Evidence Rule 412(b)(1)(C).

[29] Nevertheless, Hobbs argues the State opened the door for him to present evidence that Laura taught M.S. how to touch herself in two instances: (1) when Travis testified M.S. experienced bedwetting and night terrors after visiting Hobbs and (2) when Nurse Renz testified pediatric sexual-assault examinations have normal findings in about 95% of the cases and children know their abusers about 80% of the time. A trial court may admit otherwise inadmissible evidence for the purpose of rebutting a party's testimony at trial. *Pribie*, 46 N.E.3d at 1249. Hobbs relies on the partial-corroboration analysis in *Redding v. State*, 844 N.E.2d 1067 (Ind. Ct. App. 2006), *reh'g denied*, to support his arguments. We believe *Redding* is instructive in deciding under Evidence Rule 412(b)(1)(C) whether the defendant's right of cross-examination was violated. Pursuant to *Redding*, the risk of partial corroboration arises when the **State** introduces evidence of the victim's physical or psychological condition to prove that sexual contact occurred and, by implication, that the defendant was the perpetrator. *Id.* at 1071. Once admitted, such evidence may be impeached by the introduction through cross-examination of specific evidence that supports a reasonable inference and tends to prove the conduct of a perpetrator other than the defendant is responsible for the victim's condition which the **State** has placed at issue. *Id.* Under the *Redding* analysis, a

defendant's right to cross-examination is violated when (1) the State introduces evidence of a victim's physical or psychological condition that implies the defendant is responsible for the victim's state and (2) the prior sexual acts of the victim that the defendant wishes to admit support an inference that someone other than the defendant was the perpetrator.

[30] Hobbs first claims Travis's testimony that M.S. experienced bedwetting and night terrors after visiting Hobbs opened the door for him to present evidence that Laura taught M.S. how to touch herself because the evidence gave the impression that M.S.'s psychological condition was the result of Hobbs molesting her. The problem with Hobbs's argument is that the trial court instructed the jury to "disregard" the question and answer. Tr. Vol. III p. 152. "A timely and accurate admonition is presumed to cure any error in the admission of evidence." *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002). Although Hobbs claims the admonishment was "insufficient to cure the error," Appellant's Br. p. 30, he has given us no reason to believe the jury did not follow the court's admonishment other than baldly claiming "it is exceedingly difficult to believe that this particularly prejudicial piece of testimony was ultimately disregarded by the jury." *Id.* at 31. Moreover, when the court gave the admonishment, Hobbs did not claim it was inadequate or move for a mistrial. To the extent the State "opened the door," the trial court's admonishment closed it.

[31] Hobbs next claims Nurse Renz's testimony opened the door for him to present evidence that Laura taught M.S. how to touch herself. Specifically, he claims

Nurse Renz's testimony that pediatric sexual-assault examinations have normal findings in about 95% of the cases and that children know their abusers about 80% of the time was

> nothing more than a thinly veiled attempt to bolster the testimony of [M.S.] and vouch for her credibility, albeit in an indirect manner. Because of this, Hobbs claims he should have been permitted to inquire into evidence that suggests the possibility that someone other than Hobbs could have been responsible for [M.S.'s] condition and/or behavior and to challenge the bolstered credibility of M.S.'s story with evidence that tends to impair the same.

Appellant's Br. p. 33. Hobbs reads *Redding* too broadly. Under *Redding*, the prior sexual acts of the victim must support the inference that someone other than the defendant was the perpetrator. Here, even assuming Nurse Renz's testimony opened the door, the evidence Hobbs seek to admit—that Laura taught M.S. how to touch herself—did not tend to support an inference that someone other than Hobbs was responsible for M.S.'s condition. As defense counsel acknowledged at oral argument, this evidence did not relate to the allegations Hobbs put his "wiener" in M.S.'s "vagina." Hobbs was not entitled to present evidence that Laura taught M.S. how to touch herself.

## III. Vouching

[32]     Hobbs next contends Nurse Renz and Nurse Wilson engaged in improper vouching when they testified (1) "normal" findings occur in about 95% of pediatric sexual-assault examinations because children often delay disclosure

and (2) about 80% of children know their abusers. Vouching testimony is specifically prohibited under Indiana Evidence Rule 704(b), which states: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Hobbs, however, did not object to most of the nurses' testimony he refers to on appeal. *See* Tr. Vol. III pp. 27-32, 163. The State argues Hobbs has waived this issue. We agree.

[33]     Waiver notwithstanding, we find no error. This Court has addressed similar arguments in several cases, finding no impermissible vouching. For example, in *Alvarez-Madrigal v. State*, a pediatrician testified "about 4 to 5 percent of children who have been victims of sexual abuse will have some kind of obvious physical evidence of penetration or sexual abuse." 71 N.E.3d 887, 893 (Ind. Ct. App. 2017), *trans. denied*. When the State asked if that meant the rest of the children made up the allegations, the pediatrician responded:

> No, it doesn't mean that. It just means it's the nature of the abuse. Like I said, often the disclosure is late, injuries are subtle or even very obvious it healed by the time we get to see them. And in fact some statistics will quote that less than two to three children out of a thousand are making up claims.

*Id.* (emphasis omitted). On appeal, we found no impermissible vouching because the pediatrician's testimony was neither a statement as to the victim's credibility nor an opinion regarding the truth of the allegations against the defendant. *Id.*

[34] Similarly, in *Baumholser v. State*, 62 N.E.3d 411 (Ind. Ct. App. 2016), *trans. denied*, when the State asked the forensic interviewer whether the children she interviewed had delayed disclosure, she testified that "most of the time [disclosure] is delayed in some way." *Id.* at 416. On appeal, we found no impermissible vouching because the forensic interviewer's "testimony did not relate to the truth or falsity of [the victim]'s allegations. Rather, [she] was making a statement about how victims of child molestation behave in general." *Id.* Because Nurse Renz and Nurse Wilson did not testify about M.S.'s or K.H.'s credibility or the truth or falsity of their allegations but testified how child-molesting victims behave in general, there is no impermissible vouching in this case either.

## IV. Sufficiency of the Evidence

[35] Hobbs next contends the evidence is insufficient to support all five of his convictions. However, given our holding in Section I above, Hobbs now has two convictions remaining, Count II: Level 1 felony child molesting (M.S.) and Count V: Level 4 felony child molesting (K.H.). Regardless, Hobbs does not challenge each individual conviction; rather, he argues that because "both Victims admitted to having lied about their respective stories on several occasions," their testimony was "both equivocal and objectively unreliable." Appellant's Br. p. 21. Although Hobbs does not cite the incredible-dubiosity doctrine, the State asserts Hobbs is making his argument under this doctrine. In his reply brief, Hobbs does not dispute the State's characterization of his argument. Accordingly, we address his argument under this doctrine. *See Toles*

*v. State*, 151 N.E.3d 805, 808 (Ind. Ct. App. 2020) (treating defendant's sufficiency argument as an incredible-dubiosity argument).

[36] Under the incredible-dubiosity doctrine, we can impinge upon a factfinder's responsibility to judge the credibility of the witnesses when "the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010), *trans. denied*. As our Supreme Court has said, the incredible-dubiosity doctrine "requires that there be: 1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence." *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015).

[37] Hobbs makes an argument under the second element only. That is, he claims the victims' testimony was contradictory and equivocal because they admitted they lied in various respects during their interviews at Kids Talk. However, "witness testimony that contradicts [a] witness's earlier statements does not make such testimony 'incredibly dubious.'" *Stephenson v. State*, 742 N.E.2d 463, 498 (Ind. 2001). M.S. unequivocally testified that on at least two occasions, Hobbs placed his penis in her vagina, which hurt. Similarly, K.H. unequivocally testified that on more than one occasion, Hobbs forced her to perform oral sex on him. Because the victims testified Hobbs molested them, and because that testimony was not incredibly dubious, we affirm Hobbs's convictions on Counts II and V.

# V. Inappropriate Sentence

[38]     Last, Hobbs contends his seventy-year sentence is inappropriate. Because of our holding in Section I above, Hobbs now has two convictions remaining, Count II: Level 1 felony child molesting (M.S.) and Count V: Level 4 felony child molesting (K.H.). The trial court sentenced Hobbs to thirty-five years on Count II and nine years on Count V, to be served consecutively, for a total sentence of forty-four years. As such, we address whether Hobbs's forty-four-year sentence is inappropriate.

[39]     Indiana Appellate Rule 7(B) provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008)). Because we generally defer to the judgment of trial courts in sentencing matters, defendants must persuade us that their sentences are inappropriate. *Schaaf v. State*, 54 N.E.3d 1041, 1044-45 (Ind. Ct. App. 2016).

[40]     A person who commits a Level 1 felony child-molesting offense described in Indiana Code section 35-31.5-2-72(1) (the defendant is at least twenty-one years old and the victim is less than twelve years old) shall be imprisoned for a fixed

term of between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(c). A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two and twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5. Here, the trial court ordered Hobbs to serve above-advisory sentences on each count and ordered the sentences to be served consecutively. On appeal, Hobbs does not challenge the length of the individual sentences; rather, he asks us to order the sentences to be served concurrently instead of consecutively. *See* Appellant's Br. p. 38. We decline to do so.

[41] Hobbs does not claim his sentence is inappropriate because of the nature of the offenses. Hobbs had sexual intercourse with his stepdaughter more than once and forced his daughter to perform oral sex on him more than once. Hobbs, however, claims his sentence is inappropriate due to his character, specifically, that he had no criminal history. Although we acknowledge Hobbs did not have a criminal history, that he molested his daughter and stepdaughter more than once each supports consecutive sentences totaling forty-four years.

[42] Affirmed in part and reversed and remanded in part.

May, J., and Robb, J., concur.